Opinion issued April 15, 2004




 

    





     





In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01264-CV




JERRY WAYNE WIGFALL, Appellant

V.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE, Appellee




On Appeal from the 278th District Court
Walker County, Texas
Trial Court Cause No. 20,301-C




O P I N I O N

          Appellant Jerry Wayne Wigfall slipped and fell while in the custody of
appellee, the Texas Department of Criminal Justice (“TDCJ”). The jury exonerated
the TDCJ from any premises liability connected with the fall. Wigfall appeals the
trial court’s judgment on the jury verdict, contending that the trial court (1) abused
its discretion in failing to sanction the TDCJ by excluding witnesses it designated 31
days before trial, and (2) erred in failing to appoint counsel to represent him. He
further contends that the jury’s verdict is against the great weight and preponderance
of the evidence. We conclude that Wigfall’s contentions are without merit and
therefore affirm.
Background
          In April 1998, while incarcerated at the Holliday Unit in Walker County, 
Wigfall slipped and fell as he exited the shower. Wigfall sued the TDCJ, seeking
personal injury damages he alleged were caused by his fall. In May 1999, Wigfall
sent a Rule 194 request for disclosure to the TDCJ. The TDCJ responded, but
indicated it would later supplement with regard to expert witnesses. The trial court
dismissed the case on the pleadings, based upon Wigfall’s failure to exhaust his
administrative remedies. The Fourteenth Court of Appeals reversed the trial court’s
dismissal, holding that the TDCJ had waived the exhaustion requirement. Wigfall v.
Texas Dept. Of Criminal Justice, No. 14-01-00260-CV (Tex. App.—Houston [14th
Dist.] 2002, no pet.) (not designated for publication) (grievance procedure in Chapter
14 of the Civil Practice and Remedies Code waived).


 The Fourteenth Court of
Appeals issued its mandate July 19, 2002, and the Walker County District Clerk filed
it in the trial court on July 23, 2002. The record contains neither a written notice
from the trial court of the October trial setting, nor any amended docket control order. 
Nonetheless, on October 21, 2002, the trial court called the case to trial, and both
parties announced ready. 
          During pre-trial proceedings, Wigfall asked the trial court to exclude the
TDCJ’s expert witnesses pursuant to Rule 193.5, contending that the TDCJ
designated them within 30 days of trial. The trial court determined, however, that
the TDCJ’s designation occurred 31 days before trial, and Wigfall conceded as much
on the record. The following exchange then happened:
[The Court]:          And you’re asking, among other things, about, if the experts 
                              will --
 
[Wigfall]:              Yes, sir, I exclusively asked -- on 5/19/99, I asked for disclosure
of expert witnesses and discovery; and that was back in 1999.
 
[The Court]:          There was a time limit on when they could advise you of that
information?
 
[Wigfall]:              Yes. The rule provides automatically that it’s mandatory for
scheduling for designated experts unless the Court orders to the
contrary. That’s what the rule says, that the party seeking
affirmative relief designate 90 days before trial. All other parties
must designate 60 days before the trial date. And defendants’
counsel went way past the time limit to do this.
 
[The Court]:          What does the State have to say about this?
 
[TDCJ]:                 Yes, Your Honor, this lawsuit was filed under the old rules, so the
new rules don’t apply. Under the old rules, all experts must be
designated at least 30 days before the date of trial, which we did. 
They were designated as soon as we received the information
from TDCJ as to who would testify.
 
[The Court]:          Okay.
 
[TDCJ]                  At the time that he filed his initial request for interrogatories, we
had no one to identify at that point. Once we found out this case
was going to go to trial, we did timely designate our expert
witnesses and provided him with that more than 30 days before
trial, which is within the rules.
 
[The Court]:          Okay, Mr. Wigfall, I take it that the thrust of your motion is to
deny the State the evidence to be introduced by these experts
because they weren’t timely noticed?
 
[Wigfall]:              Right.
 
[The Court]:          But after hearing the arguments of counsel, I’m going to overrule
that and allow them to go forward with their evidence, including
experts, finding that under the old rules that the notice of their
identity was disclosed within the time limits provided by the
rules, okay?
 
[Wigfall]:              Okay. And in reference to the expert list rule – or expert rule,
there were some others, other than like the doctors and the other
– there was other wardens and so forth – nurses and so forth that’s 
being designated as expert witnesses. And in actuality, they’re
not really expert witnesses because they’re not really testifying as
experts.

(emphasis added). The case proceeded to trial. The jury unanimously found that the
TDCJ was not negligent and wholly attributed the proximate cause of the occurrence
in question to Wigfall’s negligence. The trial court rendered a take-nothing judgment
based on the jury’s verdict. 
Expert Designation
          Wigfall first contends that the trial court erred when in allowing witnesses to
testify who the TDCJ designated as experts 31 days before trial, because its
designation was not in accord with the schedule set forth in Rule 195.2 of the Texas
Rules of Civil Procedure. 

          The TDCJ responds that the trial court did not err in admitting the testimony
because its designation was timely pursuant to the rules governing discovery of expert
witnesses in effect when Wigfall filed suit. As an alternative basis for affirming the
trial court’s judgment, the TDCJ contends that any error in the admission of the
disputed testimony is harmless.
          Exclusion of a witness for a party’s failure to timely or properly designate a
witness is a sanction available to the trial court under Texas Rule of Civil Procedure
193.6. Tex. R. Civ. P. 193.6. We review the trial court’s decision with regard to
discovery matters for abuse of discretion. Bodnow Corp. v. City of Hondo, 721
S.W.2d 839, 840 (Tex. 1986); Helfand v. Coane, 12 S.W.3d 152, 155 (Tex.
App.—Houston [1st Dist.] 2000, pet. denied).
          Current Rule 195.2(b) requires that a party not seeking affirmative relief – here
the TDCJ – must designate testifying experts 60 days before the end of the discovery
period. Tex. R. Civ. P. 195.2(b). The discovery period usually ends 30 days before
trial. See Tex. R. Civ. P. 190.3. Thus, Rule 195.2(b) required the TDCJ to offer its
designation 90 days before trial. The trial court never employed Rule 195.2,
however, because it concluded that the new discovery rules did not apply to this case.
          We disagree. In November 1998, the Texas Supreme Court ordered that the
amendments to the Texas Rules of Civil Procedure apply in pending cases, including
this one.


 The trial court thus erred in applying the old discovery rules. Having
determined that the amended discovery rules apply, however, we must decide whether
the trial court’s application of the earlier version of the discovery rules resulted in
harmful error. Tex. R. App. P. 44.1(a); Spohn Hosp. v. Mayer, 104 S.W.3d 878, 884
(Tex. 2003). We conclude under these facts that it did not.
          Rule 195.2 required the TDCJ to designate its experts 60 days before the end
of the discovery period. Under the new rules, the discovery period in this case
“ended” 30 days before trial. Tex. R. Civ. P. 190.3. Thus, the TDCJ should have
designated its experts 90 days before trial. Application of Rule 195 was
impracticable, however, because the appellate court did not issue its mandate until 95
days before trial, and the trial court clerk did not file it until 91 days before trial. 
There is no indication in the clerk’s record of any notice of a trial setting after the
appeal, and certainly no record of any notice sent in the one intervening day between
receipt of the appellate court’s mandate and the supplementation deadline
contemplated in Rule 195.2(b). In circumstances such as these – in which the trial
court dismissed the case on the pleadings and an intervening appeal removed the case
from the trial court’s docket – notice of a new trial setting and a modified discovery
control plan was warranted, but did not occur. See Tex. R. Civ. P. 190.5(b). Thus,
the schedule set forth in Rule 195.2(b) was never triggered.
          In the absence of a Rule 195.2(b) schedule under the new rules,
supplementation must be made “reasonably promptly after the party discovers the
necessity for such a response.” Tex. R. Civ. P. 193.5(b). The rule further provides
that “it is presumed that an amended or supplemental response made less than 30 days
before trial was not made reasonably promptly.” See Tex. R. Civ. P. 193.5(b). In this
case, it is undisputed that TDCJ made its disclosures 31 days before trial, outside the
“unsafe” harbor provided for in Rule 193.5(b). The issue, therefore, turns on whether
the TDCJ’s supplementation 31 days before trial was reasonably prompt.



          Such an analysis is the same under the old and new rules. See Snider v.
Stanley, 44 S.W.3d 713 (Tex. App.—Beaumont 2001, pet. denied).


 Before the
amendments to the discovery rules, the rules of civil procedure provided that
supplementation of expert discovery was to occur “as soon as is practical, but in no
event less than thirty (30) days prior to the beginning of trial except on leave of
court.” See State Farm Fire & Cas. Co. v. Morua, 979 S.W.2d 616, 617 (Tex. 1998)
(quoting former Rule 166(b)(6)). The party seeking exclusion of evidence bore the
burden as to whether the expert designation was made “as soon as practical.” Mentis
v. Barnard, 870 S.W.2d 14, 16 (Tex. 1994). See also Snider, 44 S.W.3d at 715-16. 
Thus, under both the old and the new rules, if the supplemental response is made
more than 30 days before trial, the presumption of automatic exclusion does not exist. 
See Mentis, 870 S.W.2d at 16; see also Snider, 44 S.W.3d at 715 (any additional
presumption would have been incorporated into Rule 193.5).
          Because the TDCJ’s second supplemental response was not presumed
untimely, both the old and the new rules required the trial court to find that the TDCJ
failed to supplement its response reasonably promptly. See Snider, 44 S.W.3d at 716. 
During the pre-trial conference, Wigfall noted that his requests for disclosure had
been outstanding for some time, as he had propounded them before the trial court’s
earlier dismissal, and before the case was on appeal. The TDCJ explained, however,
that at the time Wigfall propounded his request, “we had no one to identify at that
point,” but that “once we found out this case was going to go to trial, we did timely
designate our expert witnesses.” The record supports this statement, as the case had
been remanded from the appellate court and re-docketed in the trial court 91 days
earlier, and apparently no new docket control order, nor any written notice of a trial
setting had issued. Moreover, the TDCJ had supplemented its discovery more than
30 days before trial. The trial court had discretion to determine whether TDCJ
supplemented its discovery responses in a reasonably prompt manner, both before and
after the amendments to the rules of civil procedure, and the record provides some
support for the TDCJ’s explanation. The trial court’s denial of Wigfall’s request for
automatic exclusion thus did not amount to an abuse of discretion. See id. As the old
and the new rules apply similarly to the facts of this case, Wigfall cannot show that
the trial court’s reliance on the old rules was harmful error.
          Moreover, Wigfall provided no argument or evidence to show that the TDCJ’s
delay rendered him unable to prepare for trial. See Chrysler Corp. v. Blackmon, 841
S.W.2d 844, 850 (Tex. 1992) (determination of whether sanction is just involves
contemplation of whether party moving for sanctions is unable to prepare for trial
without the requested discovery). He did not request a continuance, nor did he
contend that the TDCJ’s delay left him unable to conduct his own discovery. Wigfall
has not identified any evidence tendered in the TDCJ’s second supplemental response
to his request for disclosure that caused him to suffer surprise or prejudice at trial,
plus he noted that at least some of the witnesses were “not really expert witnesses
because they’re not really testifying as experts.” We cannot detect such prejudice,
because none of the discovery responses at issue are included in the appellate record.
We therefore hold that the trial court did not abuse its discretion in overruling
Wigfall’s request to sanction TDCJ by excluding its expert witness pursuant to Rule
193.6.
Appointment of Counsel
          Wigfall contends that the trial court erred in refusing to appoint counsel to
represent him. We review the trial court’s refusal to appoint trial counsel in a civil
case for abuse of discretion. Gibson v. Tolbert, 102 S.W.3d 710, 712 (Tex. 2003). 
The Texas Supreme Court has “never held that a civil litigant must be represented by
counsel in order for a court to carry on its essential, constitutional function.” 
Travelers Indem. Co. v. Mayfield, 923 S.W.2d 590, 594 (Tex. 1996). The Texas
Supreme Court has suggested, however, that in “exceptional circumstances,” a trial
court could appoint counsel to an indigent civil litigant. Id. In evaluating what might
constitute exceptional circumstances, we are to consider the “unique circumstances”
of the case and determine whether the trial court had “no reasonable alternative but
to appoint counsel.” Tolbert, 102 S.W.3d at 713.
          Wigfall contends that the following circumstances demonstrate that the trial
court abused its discretion: (1) Wigfall is indigent and therefore without funds to
retain counsel; (2) the trial court gave no reason for its denial of his motion for
appointment of counsel; (3) Wigfall desired to perform “a great deal of testing” on
TDCJ’s evidence, and could not afford such testing; (4) Wigfall’s unfamiliarity with
legal proceedings prevented him from obtaining a motion in limine to prevent the
TDCJ from referring to pre-existing medical injuries he contends were irrelevant; (5)
four TDCJ employees sat on the jury;


 and (6) Wigfall was unable to submit
appropriate instructions, definitions, and questions for the court’s charge.
          The Supreme Court addressed inmate litigation in Tolbert, and noted that
inmate suits against prison personnel are quite common. The Texas Legislature
enacted Chapter 14 of the Civil Practice and Remedies Code “in an effort to curb this
particular area of litigation excess.” Tolbert, 102 S.W.3d at 713 (Tex. 2003).


 The
Court described Tolbert’s medical malpractice claim as an “obvious example” of a
case that does not warrant the appointment of counsel. Id. The obstacles that
confronted Tolbert are similar to those that confronted Wigfall. Both are indigent,
lack legal skill and training, and desire expert testimony to refute the defendant’s
defensive theory and evidence. See id. at 711-12.
            Following Tolbert, we conclude that Wigfall’s circumstances do not warrant
appointed counsel. See id. In Tolbert, the Texas Supreme Court reasoned that
plaintiffs lacking financial resources routinely obtain legal representation through
contingent fee contracts, and recognized that as long as his claims were meritorious,
Tolbert’s indigence should not have prevented him from obtaining legal counsel. Id.
at 713. Wigfall is similarly situated. Moreover, though Wigfall lacks formal legal
training, he appears to have practical experience in civil proceedings before Texas
courts, and succeeded in reversing the trial court’s dismissal of this case. See In re
Wigfall, No. 14-03-00702-CV (Tex. App.—Houston [14th Dist.] July 3, 2003, no
pet.) (not designated for publication); see also In re Wigfall, No. 04-01-00410-CV
(Tex. App.—San Antonio July 31, 2001, no pet.) (not designated for publication). 
The trial court thus did not abuse its discretion when it refused to appoint counsel for
Wigfall.
Appellate Review of the Evidence
Standard of Review
          Wigfall attacks an adverse jury finding on an issue for which he bears the
burden of proof. He thus must demonstrate that the evidence conclusively
establishes, as a matter of law, all facts in support of the issue (for rendition), or
alternatively, that the jury’s adverse finding is against the great weight and
preponderance of the evidence (for remand). Vickery v. Vickery, 999 S.W.2d 342,
375 (Tex. 1999); Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982). In reviewing
a claim that the evidence conclusively establishes liability as a matter of law, we
consider evidence and inferences supporting the jury’s finding, and ignore all
evidence and inferences to the contrary. Havner v. E-Z Mart Stores, Inc., 825 S.W.2d
456, 458 (1992); Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989). In
reviewing a claim that the verdict is against the great weight and preponderance of
the evidence, we consider and weigh all of the evidence, and may set aside the verdict
only if the finding is so against the great weight and preponderance of the evidence
that it is clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). 
The jury may believe one witness and disbelieve another, and it may resolve
inconsistencies in any testimony. Eberle v. Adams, 73 S.W.3d 322, 327 (Tex.
App.—Houston [1st Dist.] 2001, pet. denied).
Premises Liability
          The Texas Legislature has waived the State’s sovereign immunity for injuries
caused by a condition of real property owned by a governmental entity if the
governmental entity would, were it a private person, be liable under Texas law. Tex.
Civ. Prac. & Rem.Code Ann. § 101.021(2) (Vernon 1997); City of Grapevine v.
Roberts, 946 S.W.2d 841, 843 (Tex. 1997). Under the Texas Tort Claims Act
(TTCA), the governmental entity’s standard of care depends upon whether the claim
arises from an ordinary premise defect or a special defect. Tex. Civ. Prac. &
Rem.Code Ann. § 101.022 (Vernon 1997); Roberts, 946 S.W.2d at 843. 
          If a “special defect” creates an injury causing condition, the governmental
entity owes a claimant the same duty that a private landowner owes an invitee. 
Roberts, 946 S.W.2d at 843. If an ordinary premise defect causes an injury, the
governmental entity owes the claimant the same duty that a private landowner owes
a licensee. Tex. Civ. Prac. & Rem.Code Ann. § 101.022; Roberts, 946 S.W.2d at
843. The duty that a licensor owes to a licensee for an alleged premises defect is to
not injure the licensee by willful, wanton, or grossly negligent conduct. Wal-Mart
Stores, Inc. v. Miller, 102 S.W.3d 706, 709 (Tex. 2003). If the licensor has
knowledge of a dangerous condition, and the licensee does not, the licensor must
either warn of the dangerous condition or make the condition reasonably safe. Id.
          Numerous courts have determined that a slippery floor condition constitutes
an ordinary premise defect. See, e.g., State v. Tennison, 509 S.W.2d 560, 562 (Tex.
1974) (slippery floor held to be premise defect); Blankenship v. City of Galveston,
775 S.W.2d 439, 440 (Tex. App.—Houston [1st Dist.] 1989, no writ) (slippery algae
growth on stairs of Galveston seawall held to be a premise defect and not special
defect). We hold that Wigfall’s claim concerns an ordinary premise defect. Roberts,
946 S.W.2d at 843.
          To prevail on his premises liability claim under a licensee theory, Wigfall had
to prove the following: (1) a condition on the premises created an unreasonable risk
of harm to Wigfall; (2) the TDCJ actually knew of the condition; (3) Wigfall did not
know of the condition; (4) the TDCJ failed to exercise ordinary care to protect
Wigfall from danger by both failing to adequately warn Wigfall of the danger and
failing to make the condition reasonably safe; and (5) the TDCJ’s failure proximately
caused Wigfall’s injury. State v. Williams, 940 S.W.2d 583, 584 (Tex. 1996).
          With respect to gross negligence, Wigfall testified that the shower design
requires inmates to climb into the stalls, and that no “hand railing or gripping” existed
in the shower stall in which he fell. Wigfall further testified that the TDCJ issued a
work order “to re-coat all the shower area floors that had went [sic] unnoticed until
I filed a claim.” Further evidence demonstrates, however, that Wigfall was aware of
the condition of the shower stall immediately before he slipped and fell. He testified
that before he entered the shower, “a few people had already been in the shower
before me, and I had waited my turn.” Wigfall introduced a photograph of the
location where he fell which, he explained, depicted a water stain on the floor caused
by water standing “at all times that we’re using these showers.” Wigfall admitted that
he had taken over 140 showers at the Holliday unit, had slipped before, and “was
aware that I had to be careful each and every time I entered and exited the showers.” 
Wigfall was also aware that other inmates have slipped and fallen at the exact
location where he fell. Wigfall explained that “soap build-up” from other inmates
using the showers causes the floor to become slippery, and he fell as he exited the
shower.
          With respect to Wigfall’s injuries, Dr. Glenda Adams, TDCJ’s Eastern
Regional Medical Director, testified that she reviewed Wigfall’s medical records
regarding his slip and fall, and opined that “while Mr. Wigfall probably does have
some of the symptoms that he’s claiming, it is in no way related to any type of slip-and-fall on the date in question. . . .” His examination shortly after the fall revealed
“no injuries whatsoever.” After Wigfall received treatment immediately following
the incident, he did not complain again of the injury until 45 days had elapsed. X-rays of Wigfall’s back did not indicate that he suffered any type of injury. Adams
classified Wigfall’s ability to bend and squat as “normal,” and testified that he was
able to lie on his back, straighten his legs, and lift them from the ground. Had
Wigfall suffered a neck or back injury from his slip-and-fall, Adams would not have
expected Wigfall to be able to perform these tasks in a “normal” fashion.
          We conclude that there is evidence to support the jury’s finding that Wigfall
did not sustain injury proximately caused by the TDCJ’s negligence, and that the
evidence is not so weak that the jury’s verdict is clearly wrong and unjust. See Bain,
709 S.W.2d at 176. Wigfall presented evidence that is inconsistent with the jury’s
finding, but the jury is the sole judge of the credibility of the witnesses and the weight
to be given their testimony. Jones v. Tarrant Util. Co., 638 S.W.2d 862, 866 (Tex.
1982). The trier of fact may resolve conflicts and inconsistencies in the testimony of
any one witness as well as the conflicting testimony of different witnesses. Webb v.
Jorns, 488 S.W.2d 407, 411 (Tex. 1972). Because we conclude that the evidence
supports the jury’s findings, we overrule Wigfall’s challenges to the sufficiency of
the evidence. See Prime Products, Inc. v. S.S.I. Plastics, Inc., 97 S.W.3d 631, 635
(Tex. App.—Houston [1st Dist.] 2002, pet. denied).

Conclusion
          We conclude that the trial court did not abuse its discretion with regard to pre-trial discovery matters, and did not err in refusing to appoint counsel. We further
conclude that the jury’s verdict is not against the great weight and preponderance of
the evidence. We therefore affirm the judgment of the trial court.
 
 
                                                             Jane Bland
                                                             Justice

Panel consists of Justices Taft, Keyes, and Bland.