**Petition for Writ of Mandamus Denied and Majority and Dissenting Opinions filed February 27, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00852-CV

---

### IN RE EURECAT US, INC., Relator

---

**ORIGINAL PROCEEDING
WRIT OF MANDAMUS
133rd District Court
Harris County, Texas
Trial Court Cause No. 2012-25700**

---

## DISSENTING OPINION

"**Eurecat U.S., Inc. may not serve discovery on any customers or potential customers of catalyst activation services identified in the letter from Mr. Touchstone to Mr. Escobar dated September 18, 2013.**" This order is a discovery injunction. I would grant this Petition for Writ of Mandamus. Because the majority does not, I respectfully dissent.

## A.     Introduction

Though not clear from the face of the trial court's order, review of the September 18, 2013 letter referenced shows that the order prevents Eurecat from sending any discovery *to its own customers*.   From the moment it filed the instant lawsuit, Eurecat attempted to obtain discovery in support of its claims; Real Parties resisted the discovery, alleging that the lawsuit was solely for the purposes of harassment and was without **evidentiary** support.   Real Parties maintained this position even after Eurecat obtained evidence that Real Parties solicited and secured business from Eurecat's largest client—and did so prior to their departure from Eurecat.   Real Parties assured that the client was the only one—"we promise."   Eurecat was not required to trust Real Parties.   Eurecat was not required to prove its case to obtain discovery.   Eurecat's breach of fiduciary duty claim was effectively adjudicated by this discovery injunction.   Though the trial court has great discretion over matters of discovery, this order constitutes a clear abuse of discretion.   Further, there is no adequate remedy by appeal. Mandamus should lie.

## B.     Eurecat's effort to obtain discovery

| | |
|---|---|
| Eurecat files a sworn suit against former employees and their new company (Chem32) for breach of fiduciary duty, breach of common law duty, misappropriation of confidential/proprietary information, conversion, breach of contract, and unfair competition seeking damages and injunctive relief. | 5/2/12 |
| The parties enter into a confidentiality agreement. | 6/13/12 |
| Eurecat requests, *inter alia*, identity of Real Parties' customers. | 6/14/12 |
| Real Parties counterclaim for business disparagement, tortious interference, and unlawful monopolization of the market. | 7/3/12 |
| Eurecat contacts Haldor Topsoe, its biggest customer, after it learns the customer is also doing business with Chem32. | 8/31/12 9/25/12 |
| Real Parties file their motion for protection.   Eurecat files a counter-motion to compel and for sanctions.   Real Parties respond and file a | 2/13- 3/20/13 |

| | |
|---|---|
| sealed record. | |
| Hearing: Court states on the record that Eurecat may discover the identities of Chem32 customers by presenting Chem32 a list of Eurecat customers and determining which were common to the companies. The hearing is continued. No written order issues. | 3/25/13 |
| Hearing: Court again states on the record that Eurecat may discover the identities of Chem32 customers by presenting Chem32 a list of Eurecat customers and determining which were common to the companies. Real Parties request a protective order and complain that Eurecat has violated the parties' confidentiality agreement by providing litigation materials to Haldor Topsoe. The Court responds:     Okay. Well, I'm going to tell you not to do that. And if y'all do that     again, if you give them copies of depositions, affidavits, different     things that have been used in this litigation, if I need to do a gag     order of some sort, I can do that. ***Don't contact any of the customers.*** The hearing is concluded. No written order issues. | 4/9/2013 |
| Eurecat sends a letter to Defendants proposing to send subpoenas to 89 nonparty witnesses it contends are <u>Eurecat customers</u> to obtain discovery for its claims and defenses. | 9/18/2013 |
| Emergency hearing.[1] Court signs a Texas Rule of Civil Procedure 192.6 Protective Order. | 9/20/2013 |

## C. *Eurecat's mandamus burden*

I agree with the majority's recitation of mandamus and protective order standards. Specifically, Petitioner may satisfy its burden to establish no adequate remedy at law by showing that its "ability to present a viable claim or defense is vitiated or severely compromised by the order." *In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex. 1998) (orig. proceeding). I also reiterate that, on the merits of the protective order, Real Parties needed to produce some evidence in support of

---

[1] The majority urges that the real parties "requested an emergency order." The "request" was merely a letter; it complained of Eurecat's letter and, based upon the prior proceedings, requested an order forbidding the discovery. The record contains neither a motion seeking relief from the September 18, 2013 letter nor evidence supporting such a request.

3

the request for protective order. *See Brewer & Pritchard, P.C. v. Johnson*, 167 S.W.3d 460, 466 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Some evidence must be produced in support of the request for a protective order. *Id.*

Beyond the majority's recitation, however, I note that it is axiomatic that the scope of discovery is measured by the live pleadings regarding the pending claims. Stated differently, a party's right to discovery is not conditioned upon proof of the merits of the claims. *See In re Citizens Supporting Metro Solutions, Inc.*, No. 14-07-00190-CV, 2007 WL 4277850, at *3 (Tex. App.—Houston [14th Dist.] Oct. 18, 2007, orig. proceeding) (mem. op.); *see also In re Jacobs*, 300 S.W.3d 35, 40 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding) (citing *Lunsford v. Morris*, 746 S.W.2d 471, 473 (Tex. 1988), *overruled on other grounds by Walker v. Packer*, 827 S.W.2d 833, 842 (Tex. 1992)).

As Eurecat alleges, in part, that the discovery forbidden goes to the heart of the breach of fiduciary case and prevents it from developing its claim, it is also important to consider what Eurecat must prove to prevail on that claim. We have said,

> [I]n general, an at-will employee—even a fiduciary one—may plan to compete with his employer and take certain steps toward that goal without disclosing his plans to the employer, but he may not 'appropriate his employer's trade secrets,' 'solicit his employer's customers while still working for his employer,' 'carry away certain information, such as lists of customers,' or 'act for his future interests at the expense of his employer by using the employer's funds or employees for personal gain or by a course of conduct designed to hurt the employer.'

*Pas, Inc. v. Engel*, 350 S.W.3d 602, 614 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *Johnson v. Brewer & Pritchard*, 73 S.W.3d 193, 202 (Tex. 2002)).

4

Under this standard, evidence of the content of communications between Real Parties, while still Eurecat employees, and Eurecat customers is reasonably calculated to lead to the discovery of evidence admissible in a breach of fiduciary duty. Therefore, it is discoverable.

## D.  *Eurecat's Pleadings*

As outlined above, the live pleadings control the scope of discovery. Eurecat's (sworn) Original Petition and Application for Temporary Restraining Order and Temporary and Permanent Injunctions alleges, in part:

- Although Marklund and Wene jointly decided in or before February of 2011 that they would quit their employment and enter into competition against Eurecat, they remained employees until July and September, respectively.

- During that time, while still employed by and receiving compensation from Eurecat, they secretly formed Chem32, LLC; secretly scouted for and secured a lease on a Beaumont area facility; secretly scouted for and arranged for equipment and supplies; secretly submitted applications for permits and other governmental licenses necessary to operate a catalyst activation facility; and secretly communicated with existing and prospective customers about their proposed new business.

- Damages for all causes of action as "all damages legally available"; exemplary damages; and "an order of disgorgement."

## E.  *"Mandamus Record"*

The majority opinion finds that Eurecat has failed to establish that appeal is an inadequate remedy based upon its review of the record before the trial court. However, the record before the trial court cannot be merely the Emergency Hearing of September 20, 2013, and exhibits thereto. There was no pending

5

request for relief at that hearing. There was no pending discovery request at that hearing. If that is the full record, we should grant relief without delay as the trial court *sua sponte* refused to permit a party to propound discovery without explanation. *See Firestone v. Claycombe & King*, 875 S.W.2d 727, 729 (Tex. App.—Dallas 1994, writ denied) (holding that an order arbitrarily and *sua sponte* freezing discovery is an abuse of discretion); *see also Helfand v. Coane*, 12 S.W.3d 152, 157 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

Instead, the trial court's "record," as supplied by to us by the parties, must include the prior hearings and evidence. Those earlier proceedings and the evidence presented in connection with those hearings make utterly clear that the parties began fighting over whether Eurecat was entitled to Chem32's customer list no later than February 2013.

As outlined in the timeline above, however, the only motion of Real Parties in this record is Real Parties' motion for protection, which:

- Requests "an order that prohibits Plaintiff from seeking discovery related to [Real Parties'] performance on any quality assessment of catalyst activated by Chem32 on grounds that the information is a trade secret and not within the proper scope of discovery";

- Requests that the trial court "prohibit discovery of Chem32's customers, other than Haldor Topsoe, Inc. on grounds that such information is trade secret and not within the proper scope of discovery; and

- Alleges that Real Parties have "kept the identity of its clients confidential and believes that Eurecat could engage in disparaging communications if it learns the identity of Chem32's clients."

The trial court also had Eurecat's motion to compel and for sanctions, which outlines its need for Chem32's customer information. Real Parties never allege that such discovery is not reasonably calculated to lead to the discovery of admissible evidence. Instead, Real Parties' response is replete with references to "Eurecat has no evidence." And, most telling, Real Parties state that if Eurecat's claim is based upon customer contacts that occurred before Real Parties terminated their employment with Eurecat, "Eurecat has the information. [Real Parties] provided it on July 6, 2012, and it shows contact with only one potential customer – Haldor Topsoe." Again, only one customer—"we promise."

## F.     Eurecat's Evidence

Though not required to prove a *prima facie* case to be entitled to discovery, Eurecat did support its Original Petition with affidavit testimony describing generally the proprietary information believed stolen by Real Parties from Eurecat as well as the effort required to develop the information.

During the temporary injunction hearing, the trial court also heard (self-serving) testimony from Real Party Marklund that he did not inform any Eurecat customers other than its largest, Haldor Topsoe, that he intended to leave to form a competing business. Marklund also acknowledged, however, that he and co-defendant Mr. Wene got together while they were still officers of Eurecat and formed a "hit list" of Eurecat customers that they were going "to try to take business from."

## G.     Analysis

Eurecat has established that its ability to present, *inter alia*, its breach of fiduciary claim is vitiated or severely compromised by the order at issue. *In re*

*Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex. 1998) (orig. proceeding). The majority concludes that Eurecat is not entitled to mandamus relief because it has not clearly established that the trial court's interlocutory protective order prevents it from pursuing other avenues of discovery in support of its claim for damages resulting from any breach of fiduciary duty. I disagree.

Eurecat's damage model, as established by its pleadings, is money lost (damages) by Eurecat from a loss of customers or business or money achieved (disgorgement) by Chem32 through its breach. Either way, discovery on Chem32 customers is essential. If the customers are common to Eurecat and Chem32, they are the persons with knowledge of whether Real Parties were contacting them prior to their departure from Eurecat; and, if they are not common customers (i.e., Chem32 only), they are the persons with knowledge of whether Real Parties used proprietary Eurecat data to solicit their business.

The relevant timeline outlined above shows that Eurecat began with the routine avenue of discovery. Eurecat requested Chem32 customer lists from Real Parties. Real Parties refused and averred that their customer lists were trade secrets. The trial court did not compel the discovery, though Eurecat moved to compel. So, Eurecat took the only other approach available; Eurecat advised Chem32 that it was going to subpoena its own customers[2]—such discovery would at least uncover the common customers. By the subject order, the trial court has prophylactically prohibited that avenue of discovery as well. The only "other avenue" for discovering admissible evidence about what, if any, damages Real Parties caused in an alleged breach of their fiduciary duty is Real Parties,

---

[2] We know that the list attached to the September 18 letter is Eurecat's customers not only because the letter says so, but also because Chem32 refused to provide its customer list.

8

themselves. If Real Parties are the avenue, Eurecat is required to accept Real Parties self-serving assurances that they did not contact other Eurecat customers or that they did not use Eurecat proprietary data. Zero damages—"we promise."

Moreover, the discovery injunction order is a clear abuse of discretion. First, the breadth of the order is well beyond anything Real Parties ever pled for or proved. The order does more than forbid Eurecat from serving discovery on any customers or potential customers of **Chem32's** catalyst activation services identified in the letter from Mr. Touchstone to Mr. Escobar dated September 18, 2013. It forbids Eurecat from serving discovery **on any customers or potential customers of catalyst activation services** identified in the letter from Mr. Touchstone to Mr. Escobar dated September 18, 2013—which necessarily includes Eurecat's customers as well.

Second, the discovery injunction order does not represent any effort to balance the interests of the parties. If, as Real Parties argued at the emergency hearing without evidence or pleading, the request to depose the witnesses was a deliberate attempt to interfere with the turnaround season,[3] the trial court might have delayed the discovery. If, as Real Parties argued at the emergency hearing without evidence or pleading, one or more of those witnesses might feel harassed as Haldor Topsoe did, the trial court might have controlled the type or the extent of the questions to be asked.

Instead, the trial court appears to have accepted Real Parties' representation that "to this day, there is no evidence that we are doing business with their

---

[3] Real parties described this as one of two times a year when the market is particularly active for catalyst activation services where, "in the next several months, these customers will be seeking bids for activation services."

confidential information" and "after expert disclosures, after Rule 194 disclosures, they haven't even identified economic damages."  As such, the emergency hearing on proposed subpoenas was tantamount to a summary judgment hearing without Eurecat having the benefit of notice, a motion, the opportunity to respond, or application of the appropriate standards of proof.

For the foregoing reasons, I disagree with the majority and would conditionally grant the mandamus relief requested.

/s/     Sharon McCally
        Justice

Panel consists of Justices Jamison, McCally, and Busby. (Busby, J., majority).