**William S. HELFAND, Appellant,**

**v.**

**Bruce COANE and Coane & Associates, Appellees.**

**No. 01–98–00918–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 3, 2000.

Rehearing Overruled March 6, 2000.

13. *Id.*

Charles T. Jeremiah, Charles M. Vethan, Houston, for appellant.

Kent Geoffrey Rutter, Houston, for appellee.

Panel consists of Chief Justice SCHNEIDER and Justices ANDELL and DUGGAN.*

## OPINION

LEE DUGGAN, Jr., Justice (Retired).

William S. Helfand, appellant, sued Bruce Coane and Coane & Associates, appellees (collectively referred to as "Coane"), for defamation, libel *per se*, libel, slander, negligent supervision and hiring, and tortious interference. The trial court rendered summary judgment in favor of Coane on all claims. We reverse and remand for further proceedings.

### Background

Helfand and Coane are attorneys who represented opposing parties in federal court. Helfand represented Exxon Chemical Services Americas, Inc., and Coane represented Thibodeaux. Ty Snelling was in-house counsel for Exxon. Although Snelling supervised Helfand's work for Exxon, Helfand filed a designation of counsel with the trial court that listed Snelling as co-counsel.

Helfand's suit against Coane arose from their representation of Exxon and Thibodeaux. Helfand alleged that Coane defamed Helfand with false out-of-court statements published in a letter to Helfand *with a copy directed to* Snelling. The letter, among other things, accused Helfand of: (1) being a "habitual liar"; (2) being a "sociopath"; (3) repeatedly lying to federal judges; and (4) having a Fifth Circuit panel walk out during his argument because he lied about the holding of a case. Coane's letter reads:

> I have talked to at least half-a-dozen lawyers who have had cases with you. Believe it or not, not one of them had a kind word to say about you. They have described you as "a habitual liar," "a sociopath," "he'll lie to you and to the court," "the Fifth Circuit panel got up and walked out during his oral argument when he lied about the holding in a case," etc. Further, these lawyers have told me that judges such as *Judge Lynn Hughes* and *Judge Sim Lake* have already caught on to your pattern of lies and your obstructive behavior in discovery.

> * * *

> Lastly, it is quite ironic for you to be lecturing me about a "cavalier attitude with respect to the Court's rulings, rules, and law." While I have shown nothing but the deepest respect for Judge Atlas and her rulings, it is you, with the well-established track record before *Judge Lynn Hughes, Judge Sim Lake, and the Fifth Circuit,* who has the arrogance and gaul to *repeatedly lie to Federal judges*. And now, I should somehow give credence to your threat of personally taxing me with sanctions for filing a motion to amend, to make a minor technical amendment to the pleadings on a theory of law that Judge Atlas has already indicated is in the case? I don't think so. Frankly, as an Exxon shareholder, it disgusts me that the company should retain a lawyer like you who is more interested in playing games, telling lies, and wasting the company's money, than someone who plays by the rules and exhibits some degree of professionalism. My company, Exxon, was given every opportunity to sit down with a mediator and resolve this case in a decent way. My client has even been willing to go before a panel of neutral arbitrators and end this case by binding high-low arbitration. To coin your phrase, "shame on *you*," and shame on

---

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

Exxon for preferring to fight this case in the gutter.

(Emphasis in original).

Helfand alleged that Coane's law firm was liable for Coane's conduct independently for negligent supervision, and also under respondeat superior. Coane filed an answer denying the allegations and claiming, among other things, the affirmative defenses of absolute privilege. On the same day, Coane also moved for summary judgment on the grounds that Helfand's claims were absolutely barred by privilege. Coane's motion was set for submission on May 18, 1998.

Helfand responded to the motion for summary judgment, moved for a continuance, and sent notice of Coane's deposition to be taken on May 20, 1998. The trial court denied Helfand's motion for continuance and, at Coane's request, ordered that no discovery would be permitted until the motion for summary judgment was ruled upon.

Helfand amended his petition, and Coane filed a second motion for summary judgment. On May 19, 1998, the trial court again ordered that discovery be stayed until it ruled on Coane's second motion for summary judgment. Helfand amended his petition a second time, and requested that the trial court reconsider its freeze on discovery. On June 16, 1998, the trial court denied the motion for reconsideration, admonished Helfand against endlessly amending his pleadings to avoid summary judgment, and ordered that the stay on discovery continue until it ruled on a third motion for summary judgment, if Coane filed it by June 30, 1998. Coane filed a third motion for summary judgment, and the trial court granted it, dismissing all of Helfand's claims.

Coane's third motion for summary judgment was based on one theory—Helfand's defamation claim was barred by the absolute privilege for communications made in the course of judicial proceedings. Coane argued that because the def-amation claim was barred by absolute privilege, Helfand's remaining claims for negligent supervision, tortious interference, and slander were also barred, because the defamation claim could not be re-characterized or re-labeled to circumvent the privilege.

### Freezing Discovery

■ In point of error five, Helfand complains of the trial court's order freezing discovery. We review a trial court's order prohibiting discovery for an abuse of discretion. *K.C. Roofing Co., Inc. v. Abundis*, 940 S.W.2d 375, 379 (Tex.App.—San Antonio 1997, writ denied). The freezing of discovery is generally error, and can be reversible error if harm results. *Id.*

We have found two cases in which the freezing of discovery was reversible error and one case in which the error was held harmless. *Compare General Electric Co. v. Salinas*, 861 S.W.2d 20 (Tex.App.—Corpus Christi 1993, no writ), *and Firestone v. Claycombe & King*, 875 S.W.2d 727 (Tex. App.—Dallas 1994, writ denied), *with K.C. Roofing*, 940 S.W.2d at 379.

In *Salinas*, the court held it was an abuse of discretion for the trial court to arbitrarily freeze discovery, without notice to the parties. 861 S.W.2d at 23. The trial court's order freezing discovery was issued after the initial trial setting, at which time the defendants announced not ready for trial, and moved for a continuance based on a need for additional discovery. The trial court denied the continuance, reset the case for trial, and ordered the freeze on discovery. *Id.* at 22. On appeal, the *Salinas* court reasoned that the order freezing discovery was not authorized by the Rules of Civil Procedure—it was not an authorized sanctions order under Rule 215, it was not a docket control order entered pursuant to a discovery schedule established at a pretrial conference under Rule 166(c), and it could not be characterized as a protective order under Rule 166b(5). *Id.* at 23.

Similarly, the *Firestone* court found an abuse of discretion when the trial court *sua sponte* ordered a freeze on discovery. 875 S.W.2d at 729. The trial court had set the case for trial on March 11, at which time Firestone appeared and announced it was not ready for trial. *Id.* at 728. The trial court denied Firestone's motion for continuance, rescheduled the case for trial, and froze discovery, indicating that no party would be permitted to supplement or otherwise modify the existing discovery. *Id.* However, on March 20, the trial court issued a new scheduling notice that included an April 20 discovery completion date. *Id.* When Firestone attempted to supplement discovery, upon the objection and motion of the opposing party, the trial court withdrew its March 20 scheduling notice and ruled that the parties could not supplement discovery. *Id.* On appeal, the court held that the trial court's initial order freezing discovery was an abuse of discretion because it was entered *sua sponte*, without notice to the parties or a hearing. 875 S.W.2d at 729.

In *K.C. Roofing*, the court found an abuse of discretion when the trial court froze discovery, but held the error was harmless. 940 S.W.2d at 380. The court reasoned that, when the trial court issued its order freezing discovery, the time for discovery had already passed, no discovery was in progress, and no discovery had even been requested. *Id.* Thus, the court concluded there was no harm. *Id.*

■ The situation in this case is different from each of these cases. The order freezing discovery was not issued after an initial trial setting because the case never even progressed to that stage. To the contrary, the order was issued within less than two months of the filing of the law-

suit, which was dismissed exactly four months after it was filed.[1] The trial court ordered the freeze almost immediately after Coane filed the motion for summary judgment, which means Helfand was not allowed to engage in any discovery (despite his repeated requests for discovery), nor was he allowed to cross-examine Coane on statements made in his affidavit supporting summary judgment.

Coane argues the freeze on discovery was appropriate because the trial court did not need the discovery sought in ruling on the motion for summary judgment. More specifically, Coane argues the trial court could decide the question of the absolute privilege without discovery because it is purely a question of law. By rendering summary judgment in favor of Coane, the trial court reached a legal conclusion, based on the pleadings alone, that each of Helfand's claims was barred by absolute privilege.

Coane's argument, however appealing, oversimplifies the issues in the case. There are two reasons why Coane's argument fails, and, as we explain below, more than simply Coane's letter is needed to answer the privilege question.[2]

■ First, Coane's argument incorrectly assumes that Helfand's claims arise only from the statements in the letter; however, Coane's letter is not only a publication of statements to Snelling and Exxon, *but also a re-publication of statements* either heard from or made to other attorneys by Coane. Coane's letter said:

> *I have talked to at least half-a-dozen lawyers who have had cases with you .... not one of them had a kind word to say about you. They have described you as ....*

---

1. Helfand filed suit on March 20, 1998. The trial court maintained a complete freeze on discovery from May 7, 1998, approximately 10 days after Coane first answered, until July 20, 1998, when the case was finally dismissed. During this time period, Coane filed two motions for summary judgment on each of Helfand's claims. Helfand's motions for

continuance, based on the need for additional discovery, were denied, and Coane's summary judgment was finally granted.

2. That Coane included his own affidavit to try to establish the privilege supports our reasoning.

Thus, Helfand's claims also arise from the statements *referenced* by Coane in the letter. This is clear from his second amended petition, in which Helfand alleges:

> [It] is apparent from that letter that additional defamatory communications were made regarding Helfand, outside of the letter itself. In fact, there are specific references to incidents of slander. *[Helfand] contends incidents of slander occurred outside the libelous letter.*

Therefore, Helfand was entitled to cross-examine Coane on his statements in the letter. Despite Coane's arguments to the contrary, Helfand was also entitled to determine the identities of the other "at least half-a-dozen" attorneys to whom Coane spoke.[3]

■ Second, Coane's argument fails because the issue of whether Helfand's claims are barred by absolute privilege, although a question of law, is fact intensive and dependent. This is because the statements in dispute are out-of-court statements that require the trial court to engage in an analysis different from one that applies to in-court statements.

■ Generally, the immunity afforded by the absolute privilege means that any statement made in the trial of any case cannot constitute the basis for a defamation action, regardless of the negligence or malice with which it is made. *Bird v. W.C.W.*, 868 S.W.2d 767, 771 (Tex.1994); *James v. Brown*, 637 S.W.2d 914, 916 (Tex.1982); *Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 166 S.W.2d 909, 912 (1942). This privilege extends to any statement made by the judge, jurors, counsel, parties, or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits, and any of the pleadings or other papers in the case. *James*, 637 S.W.2d at 916–17.

■ Although the privilege has been a part of Texas law for over 100 years, it has only recently been applied to out-of-court statements by attorneys, as long as the statement is made preliminary to or in connection with a judicial proceeding. *Russell v. Clark*, 620 S.W.2d 865, 869 (Tex. App.—Dallas 1981, writ ref'd n.r.e.) (holding letter from defendant, who was an attorney, sent to plaintiff's investors seeking evidence for use in pending litigation was privileged). Thus, under *Russell*, there are multiple components to the absolute privilege: (1) that the act to which the privilege applies must bear *some relationship* (2) to a judicial proceeding in which the attorney is employed, and (3) the act must be in *furtherance* of that representation. 620 S.W.2d at 869; *see also Thomas v. Bracey*, 940 S.W.2d 340, 343 (Tex.App.—San Antonio 1997, no writ) (interpreting *Russell* to find an out-of court statement privileged). In this case, the question of absolute privilege could be answered once these components have been established. Cross-examination of Coane, and a knowledge of the attorneys he spoke to, would answer this question.

We hold the trial court erred in freezing discovery, and Helfand was harmed by the error.

We sustain appellant's point of error five.[4] Accordingly, we reverse and re-

---

**3.** We reject Coane's argument that Helfand was not entitled to discovery for the mere purpose of determining who another defendant is or may be. Under our discovery rules, past and present, a party is entitled to obtain discovery regarding potential parties to a lawsuit. Tex.R. Civ. P. 192.3(i), 192.5(c)(3), and 194.2(b); *see also Fepco, LTDA v. Coussons*, 835 S.W.2d 251, 253 (Tex.App.—Houston [1st Dist.] 1992, orig. proceeding) (interpreting former Rule 166(b)(2)(d) in a defamation suit). Indeed, in a mandamus proceeding, we ordered the disclosure of potential parties to a defamation lawsuit, when, as here, the party resisting discovery had written an allegedly defamatory letter that referred to "several reliable sources." *Coussons*, 835 S.W.2d at 252–254.

**4.** Because of our disposition of point of error five, it is unnecessary to address points of error one through four.

mand the cause to the trial court for further proceedings.