**DAYSTAR RESIDENTIAL, INC. and Shiloh Treatment Center, Appellants,**

v.

**Mark W. COLLMER, Appellee.**

No. 01–03–00490–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 18, 2004.

Rehearing Overruled June 13, 2005.

Wayne H. Paris, Gillis, Paris & Heinrich, P.L.L.C., Houston, for appellants.

John D. Gilpin, Houston, for appellee.

Panel consists of Justices NUCHIA, ALCALA, and HANKS.

## OPINION

SAM NUCHIA, Justice.

Appellants, Daystar Residential, Inc. (Daystar) and Shiloh Treatment Center (Shiloh), appeal the trial court's granting of summary judgment in favor of appellee, Mark Collmer. Daystar and Shiloh present three issues for this appeal: (1) whether the doctrine of absolute privilege in regard to judicial immunity applies to disparaging statements made by Collmer and published in newspapers before his filing of a lawsuit against Daystar over the Latasha Bush death; (2) whether the doctrine of absolute privilege in regard to judicial immunity applies to disparaging statements made by Collmer and published in newspapers as to Shiloh, when Shiloh was not a party to the Latasha Bush litigation; and (3) whether the trial court erred by refusing appellants' discovery request before ruling upon Collmer's amended motion for summary judgment. We affirm.

## BACKGROUND

Daystar and Shiloh share a parent company, Behavior Training Research, Inc. On February 27, 2002, Latasha Bush, a mentally disturbed 15–year–old girl, died at Daystar Residential Treatment Center. Her death was ruled a homicide by the Harris County medical examiner. Stephanie Duffield, a resident of Shiloh had died in 2001. Her death was originally determined to be an accident, but that determination was reconsidered after Bush's death.

Bush's mother hired Mark Collmer to represent her in legal actions relating to her daughter's death. Collmer was interviewed by the *Houston Chronicle* and the Brazosport newspaper, *The Facts,* for articles about the investigation of the deaths at the Behavior Training Research facilities. The article in the *Houston Chronicle* included the following paragraphs:

> Mark Collmer, an attorney hired by [Bush's] mother, said he will file a lawsuit alleging gross negligence this week in Brazoria County.
>
> Collmer said the autopsy revealed hemorrhaging in the girl's eyes, which he said "usually comes from strangulation," as well as bruises around her neck and on her back, which he said apparently were inflicted during the basket hold restraint.
>
> "It means you were killed because you were held down" he said of the autopsy. "It's hard to breathe with three people sitting on you."

The article in *The Facts* included the following paragraphs:

> Mark Collmer, an attorney representing Bush's mother, said the new autopsy finding bolsters a civil lawsuit he plans to file in the near future.
>
> "If it's ruled they have killed someone before and they did not take steps to address the circumstances under which

that person was killed, that just shows that they're not addressing the problem," Collmer said.

These were the only parts of the articles referring to or attributable to Collmer.

On September 27, 2002, Collmer filed suit against Daystar and Behavior Training Research, seeking damages for Bush's death. On November 8, Daystar and Shiloh initiated a business disparagement suit against Collmer based on his statements to the newspapers. Collmer answered their suit with a general denial on December 11. Daystar and Shiloh initiated the discovery process in their suit against Collmer by filing requests for disclosure on December 18 and a request for production of documents on December 26. Collmer objected to this discovery, based on work product privilege and lawyer client privilege. Daystar and Shiloh then filed a motion to compel discovery on February 10, 2003. On February 13, Collmer filed suit against Shiloh and Daystar, seeking damages for the death of Duffield. On February 24, Collmer amended his original answer in the business disparagement suit, claiming immunity and absolute privilege. Collmer also filed a motion for summary judgment and a response to plaintiff's motion to compel on this date, both asserting that he was immune from suit because his statements were absolutely privileged. The trial court granted Collmer's motion for summary judgment.

**DISCUSSION**

In reviewing a summary judgment, we must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex. 1995); *Lawson v. B Four Corp.,* 888 S.W.2d 31, 33 (Tex.App.-Houston [1st Dist.] 1994, writ denied). We will take all evidence favorable to the nonmovant as

true. *Id.* As movant, the defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Marchal v. Webb,* 859 S.W.2d 408, 412 (Tex.App.-Houston [1st Dist.] 1993, writ denied). A defendant moving for summary judgment on an affirmative defense must establish that defense as a matter of law. *Long Distance Int'l Inc. v. Telefonos de Mexico,* 49 S.W.3d 347, 350–51 (Tex. 2001).

### I. Absolute Privilege: Newspaper Remarks

■ Appellants, in their first issue presented for review, contend that summary judgment should not have been granted for Collmer based on the doctrine of absolute privilege of judicial immunity because his comments were made prior to the filing of the lawsuit against Shiloh and Daystar and were published in newspapers.

■ Communications made in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made. *James v. Brown,* 637 S.W.2d 914, 916 (Tex.1982). This privilege extends to any statements made by the judges, jurors, counsel, parties, or witnesses and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits, and any of the pleadings or other papers in the case. *James,* 637 S.W.2d at 916–917. The privilege not only extends to statements made during litigation, but also to statements made in contemplation of and preliminary to judicial proceedings. *See Watson v. Kaminski,* 51 S.W.3d 825, 827 (Tex.App.-Houston [1st Dist.] 2001, no pet.) (holding that letter alleging that pris-

oner was trying to extort money from appellants and that he was likely to be sued if he attempted to do so came within judicial privilege, even though no litigation was pending). To be privileged, the communication must bear some relationship to pending or proposed litigation and must further the attorney's representation. *Id.; but see Bell v. Lee,* 49 S.W.3d 8, 11 (Tex. App.-San Antonio 2001, no pet.) (privilege attaches if statement has some relationship to contemplated proceeding, whether or not it actually furthers representation). Whether an alleged defamatory communication is related to a proposed or existing judicial proceeding is a question of law. *Thomas v. Bracey,* 940 S.W.2d 340, 343 (Tex.App.-San Antonio 1997, no writ). When deciding the issue, "the court must consider the entire communication in its context, and must extend the privilege to any statement that bears some relation to an existing or proposed judicial proceeding." *Russell v. Clark,* 620 S.W.2d 865, 870 (Tex.Civ.App.-Dallas 1981, writ ref'd n.r.e.). All doubt should be resolved in favor of the relevancy of the statement. *Id.*

■ The judicial-proceeding privilege has been applied to letters written by lawyers to potential defendants prior to suit. *Watson,* 51 S.W.3d at 827–28; *Krishnan v. Law Offices of Preston Henrichson, P.C.,* 83 S.W.3d at 301, 302 (Tex.App.-Corpus Christi 2002, pet. denied); *Crain v. Smith,* 22 S.W.3d 58, 62–63 (Tex.App.-Corpus Christi 2000, no pet.). In those cases involving statements made before suit was filed, the communications were clearly made in furtherance of the attorney's representation of his client, e.g., demand letters sent to the defendants, documents filed with quasi-judicial bodies, or documents constituting notice as required by law. The judicial-proceeding privilege has also been applied to the delivery of plead-

ings in pending litigation to the news media after the suit is filed. *Hill v. Herald–Post Publ'g Co., Inc.,* 877 S.W.2d 774, 782–84 (Tex.App.-El Paso 1994), *rev'd in part on other grounds,* 891 S.W.2d 638, 639 (Tex.1994). Just as the mere delivery of pleadings in pending litigation to the news media does not amount to publication outside of the judicial proceedings that would result in waiver of the absolute privilege, a press release advising the media that a lawsuit has been filed, including a basic description of the allegations, does not amount to publication outside of the judicial proceedings resulting in a waiver of the absolute privilege. *Dallas Indep. Sch. Dist. v. Finlan,* 27 S.W.3d 220, 238–40 (Tex.App.-Dallas 2000).

Appellants assert that the concept of absolute privilege because of judicial immunity in Texas has never been extended to statements made in newspapers at some point before a judicial proceeding is actually filed. They are correct. However, as this court stated in *Watson,* the privilege extends to statements made in contemplation of and preliminary to suit. *Watson,* 51 S.W.3d at 827. While the suit had not been filed in this case, it is clear that a suit was being contemplated and that Collmer's statements were based, in part, on his beliefs of how the new information would affect his suit. That his statements were made before the actual filing of the suit has no bearing on whether they are protected by judicial privilege. The only factors are whether his statements bore some relationship to the proposed litigation and furthered his representation of his client, regardless of the time when they were made.

Collmer's statements bore some relationship to proposed litigation and could further his representation of his client. He was remarking on circumstances which were similar to those of his client and

referenced them to the case that he planned to file in the near future. Considering the entire communication in its context, we hold that these statements fall within the absolute privilege of judicial immunity. We overrule appellants' first issue.

## II. Absolute Privilege: Statements Referencing Shiloh

In the second issue presented for review, appellants argue that the doctrine of absolute privilege because of judicial immunity should not apply to Collmer's statements regarding appellant Shiloh, because Shiloh is a non-party to the Latasha Bush lawsuit.[1]

Collmer made his comments in the newspapers as the attorney for Bush's mother. His comments were quoted in articles about a potential investigation into the 1993 death of a 16–year–old patient at a different Behavior Training Research facility. Although the articles name Shiloh as a facility in which an accidental death occurred in 2000, Collmer did not name Shiloh in his comments to the newspapers; he stated only that the new autopsy findings in the 1993 death might bolster the civil lawsuit he planned to file in the near future.

Our resolution of issue one leads us to conclude that if these statements did, somehow, remark upon Shiloh, they are also protected under the doctrine of judicial immunity because they bear some relationship to the proposed Bush litigation. *Watson*, 51 S.W.3d at 827; *see also Krish-*

*nan*, 83 S.W.3d at 302–303 (holding that when attorney sent pre-suit notice letter to two doctors and medical center, but later only sued one doctor and medical center, the other doctor could not sue in defamation action because absolute privilege applied, absent an indication that the attorney had decided not to sue him before the letter was sent).

We overrule appellant's second issue.

## III. Discovery

■ In appellants' third issue presented for review, they assert that the trial court erred by refusing appellant's request for discovery before ruling upon appellee's amended motion for summary judgment. Appellants argue that the trial court should have compelled and allowed discovery before granting summary judgment so that facts necessary to test components of judicial immunity, such as whether Collmer was contemplating a suit against Shiloh and the context of the newspaper articles could be revealed.

■ Whether an alleged defamatory communication is related to a proposed or existing judicial proceeding is a question of law. *Thomas*, 940 S.W.2d at 343. In judicial immunity cases, there are multiple components to the absolute privilege: the communication must bear some relationship to a judicial proceeding; the attorney must be employed for that proceeding; and the communication must be in furtherance of that representation. *Helfand v. Coane*, 12 S.W.3d 152, 158 (Tex.App.-

---

1. Appellants cite *Knox v. Taylor* for the proposition that the judicial privilege is not applicable to comments made about parties who are not involved in the subsequent litigation that was the subject of the statements. *Knox v. Taylor*, 992 S.W.2d 40, 53 (Tex.App.-Houston [14th Dist.] 1999, no pet.). However, *Knox* involved a non-party to a suit sending copies of the pleadings and other material to other non-parties to the suit. The 14th Court of Appeals held that because the other materials sent with the pleadings were not within the scope of judicial privilege, these materials, not the pleadings, provided the basis for a defamation suit. *Id.* Because the facts in that case are dissimilar from the one at hand, *Knox* provides little guidance.

Houston [1st Dist.] 2000, pet. denied). Thus, determining whether a communication is absolutely privileged under *Russell* requires sufficient discovery. *Watson,* 51 S.W.3d at 827.

The statements at issue in this case were made by Collmer and published in newspapers. The newspaper articles were included in the record and available to the trial court. In this case, unlike *Helfand,* there is no dispute regarding the publication of the articles or the facts surrounding the statements. It is uncontested that Collmer was retained to represent Bush's mother. It is clear from the articles that Collmer was discussing a proposed judicial proceeding and that his comments were in furtherance of that representation. Thus, the evidence was sufficient to establish the *Helfand* components, and there was no need for further discovery. *See Clawson v. Wharton County,* 941 S.W.2d 267, 273–74 (Tex.App.-Corpus Christi 1996, writ denied) (holding that there is no error in refusing to continue a summary judgment hearing for further discovery when the discovery sought is immaterial to the motion at issue). We hold that the trial court did not abuse its discretion by denying appellant's motion to compel further discovery.

We overrule appellants' third issue.

## CONCLUSION

We affirm the judgment of the trial court.