**Opinion issued November 3, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-01025-CV

————————————

**ALI LAHIJANI AND MEGA SHIPPING, LLC, Appellants**

**V.**

**MELIFERA PARTNERS, LLC, MW REALTY GROUP, AND MELISSA WALTERS, Appellees**

---

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-60091**

---

## MEMORANDUM OPINION

This interlocutory appeal arises from a dispute between appellants, Ali Lahijani and Mega Shipping, LLC, and appellees, Melifera Partners, LLC, MW Realty Group, and Melissa Walters, over a real estate joint venture. Asserting that

claims in a lawsuit appellees filed against appellants were related to their exercise of free speech, appellants filed a motion to dismiss those claims pursuant to the Texas Citizen's Participation Act (TCPA).[1] The trial court denied the motion. We affirm.

## Background

Melifera Partners, a private investment company consisting of nineteen investor partners, specializes in investing in mortgaged foreclosed real properties purchased at auction in Harris County, Texas. Melissa Walters, a licensed Texas real estate broker, is the managing partner of Melifera and the owner of MW Realty, a Texas broker limited liability corporation. Cameron Namazi is a real estate investor and licensed Texas real estate agent.

In 2013 and 2014, Walters, on behalf of Melifera, and Namazi successfully jointly purchased six foreclosed properties at auction. For each property, Namazi brought in an outside equity investor who invested 50% of the funds needed for the purchase of the property. Melifera's partners and the equity investors received a net profit from the subsequent sale of the properties.

After the properties were purchased, Melifera, through Walters, managed them, including making repairs, performing maintenance, and ordering and paying for utilities and insurance, until their subsequent sale. Following a sale, the outside

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West Supp. 2014).

2

equity investor reimbursed Melifera 50% of all advanced costs and expenses incurred from the gross proceeds of the sale. Walters and Namazi, as the listing agents, received a 6% real estate broker commission from the sales of the foreclosed properties.

On May 6, 2014, Melifera and Mega Shipping, an equity investor brought in by Namazi, purchased a foreclosed real property located at 2413 Wichita Street, in Houston, Texas, for $207,000. The Wichita Street property subsequently sold for $325,000.

Two days before closing, Walters sent an email to Lahijani, Mega Shipping's manager, detailing the costs, totaling $7,294.22, that Melifera had incurred in repairing and maintaining the Wichita Street property, and requesting that Mega Shipping reimburse 50% of those costs. Walters also sent an email to the title company detailing the distribution of the disbursements from the sale between Melifera and Mega Shipping. When Lahijani expressed disbelief that the expenses could be so high, Walters sent a follow-up email to him attaching receipts supporting the claimed expenses.

The closing took place on August 15, 2014. The HUD-1 Settlement Statement for the property, which was executed by all the parties, reflects a 6%

commission due to MW Realty Group.[2]  However, following the closing, Lahijani refused to agree to pay the 6% commission or to reimburse Melifera 50% of the expenses incurred, and demanded that the net proceeds from the sale be evenly split and disbursed with no deductions for expenses and commissions.

T. Deon Warner, counsel for Melifera and Walters, sent a letter to Lahijani requesting that he authorize disbursement of the sale proceeds to the parties, including deductions for expenses and sales commission.  In his response to Warner—which had as its subject line "2413 Wichita property transaction"— Lahijani disputed that Walters was entitled to a 6% commission and that the expenses incurred by Melifera were properly supported by documentation. Specifically, Lahijani made the following statements:

- The funds at Stewart Title should be released in an equal amount to both parties, with no deductions for commissions for two reasons: we both had brokerages available (neither should be given preference) and Ms. Walters tried to slip in a commission to herself at the last minute without notification or approval by the other party.

---

[2]  The parties do not dispute that BHGRE Gary Greene Realtors was the listing real estate broker for the Wichita Street property and its agent, Andy Moran, was the real estate listing agent at the time the property was purchased.  Appellants contend that Walters unilaterally terminated Gary Greene's brokerage agreement without informing Mega Shipping or obtaining its approval, and that, at Walters's direction, Stewart Title Company deducted a 6% brokerage commission ($19,500.00) from the sales proceeds and distributed the commission to Walters. Appellees, however, contend that Moran terminated his real estate relationship with Gary Greene in June 2014 and joined MW Realty, and that he brought the Wichita Street property listing with him without objection from Gary Greene. Walters claims that Namazi knew of the listing change and that Walters assumed that Namazi, who brought Mega Shipping in as the equity investor and was also Lahijani's nephew, had notified Lahijani of the listing change.

4

- We feel it is inappropriate for our investment partner to secretly terminate the contract that we jointly signed and somehow get a contract from the same agent on July 9th, when the transaction from Gary Greene to her agency is not reflected until July 29th, oh, and magically put in for commission (by email the day before closing) on a listing agreement that we have neither signed, nor been made aware.

Lahijani also sent a copy of the letter to the title company.

After meeting with Walters, Lahijani sent an email to Cynthia Cruz, a representative at the title company, in which he made the following statements:

- Mr. Lajihani agrees to pay half of the verified expenses which are now projected by Ms. Walters to be about $5,800. She was formerly claiming $7,900 and was happy to accept payment for phantom expenses, which she now admits she does not have. Further, review of what she submitted at the meeting only yields about $4,252.33 in unverified expenses.

- Mega Shipping, since it never authorized a commission to MW Realty nor was it given the opportunity, proposes that the effective commission to MW Realty be reduced to Three (3) Percent instead of the Six (6) Percent that was paid.

- Ms. Walters needs to take responsibility for inadequate paperwork, lack of communication to and authorization from her partner Mega Shipping.

Appellees filed suit against appellants for declaratory judgment, common law and statutory fraud, negligence, libel, and business disparagement. Appellants filed an amended motion to dismiss and for sanctions under the TCPA seeking to dismiss appellees' claims of libel and business disparagement. Following a hearing, the trial court denied appellants' motion to dismiss. This interlocutory appeal followed.

5

## Texas Citizen's Participation Act

In enacting the TCPA, the Legislature explained that its purpose "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002; *see In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) (noting purpose of Act is to summarily dispose of lawsuits designed only to chill First Amendment rights). To promote these purposes, chapter 27 provides a means for the expedited dismissal of unmeritorious suits that are based on, related to, or in response to a party's exercise of its right of free speech, right to petition, or right of association. TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). Statutes like chapter 27 are commonly referred to using the acronym "anti-SLAPP" because they are intended to curb "strategic lawsuits against public participation." *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 868 (Tex. App.—Dallas 2014, no pet.). The Legislature has directed courts to construe the statute liberally "to effectuate its purpose and intent fully." TEX. CIV. PRAC. & REM. CODE ANN. § 27.011(b).

In deciding whether to grant a motion under the TCPA and dismiss the lawsuit, the statute directs the trial court to "consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based."

*Id.* § 27.006(a). The court must determine whether (1) the moving defendant has shown by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of the right of free speech, the right to petition, or the right of association; and (2) the plaintiff has shown by clear and specific evidence a prima facie case for each essential element of the claim in question. *Id.* § 27.005(b), (c). The first step of this inquiry is a legal question we review de novo. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008); *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

**Discussion**

In their first issue, appellants contend that appellees' libel and business disparagement claims relate to appellants' exercise of their right to free speech on issues regarding "economic or community well-being" and "the provision of services in the marketplace"—issues defined by the TCPA to be "matters of public concern." In their third issue, they argue that appellees failed to present "clear and specific evidence" of a prima facie case for each element of their libel and business disparagement claims.

**A. Exercise of "the right of free speech"**

The TCPA defines "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." TEX. CIV.

PRAC. & REM. CODE ANN. § 27.001(3). A "communication" includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). A "matter of public concern" is defined to include an issue related to health and safety, environmental, economic, or community well-being, the government, a public official or public figure, or a good, product, or service in the marketplace. *Id.* § 27.001(7).

Appellants argue that Lahijani's alleged defamatory statements about Walters regard a matter of public concern in two ways. First, they assert that Walters, a licensed real estate broker, offers services heavily regulated for the protection of the general public, and that Lajihani's statements complaining that Walters did not obtain Mega Shipping's written consent to representation (for which Walters earned a 6% commission) is a statement regarding the quality of those services and, thus, an issue related to "economic or community well-being." Second, they assert that Walters also provided managerial services for the Wichita Street property prior to its sale, including repairs, maintenance, and ordering and paying for utilities, and that Lahijani's statements complaining that Walters failed to obtain approval from Mega Shipping for those expenses and failed to properly document those expenses relate to a service in the marketplace.

We initially note that appellants argued in their motion to dismiss only that Lahijani's statements were made in connection with a matter of public concern

8

because they relate to a "service in the marketplace." As that theory is the one that was presented to, and rejected by, the trial court, it is the only one preserved here for our review. *See* TEX. R. APP. P. 33.1; *see also Combined Law Enforcement Ass'n of Tex. v. Sheffield*, No. 03-13-00105-CV, 2014 WL 411672, at *4 (Tex. App.—Austin Jan. 31, 2014, pet. denied) (mem. op.) (concluding that where appellants cited only "right of association" in their motions to dismiss, trial court's rejection of that theory was only one of three rights protected under TCPA that was preserved for review).

We conclude that the statements at issue were not made in connection with a matter of public concern. The communications related to whether Walters was entitled to receive a 6% commission upon sale of the Wichita Street property and whether Mega Shipping owed 50% of the expenses Melifera allegedly incurred for repairs to and maintenance of the property. Appellees base their defamation and business disparagement claims on Lajihani's statements that (1) Walters secretly terminated the parties' listing agreement with Gary Greene BHGRE and then tried to "slip in" a sales commission for herself without providing notification to, or receiving authorization from, Mega Shipping; (2) Walters sought reimbursement to Melifera for "phantom expenses" which were unsupported by documentation; and (3) Walters "need[ed] to take responsibility for inadequate paperwork, lack of communication to and authorization from her partner Mega Shipping." These

9

statements make no mention of a service in the marketplace. Rather, the statements at issue are limited to a business dispute over a real estate joint venture and were not made in connection with a matter of public concern. *See ExxonMobil Pipeline Co. v. Coleman*, 464 S.W.3d 841, 846 (Tex. App.—Dallas 2015, pet. filed) (concluding TCPA did not apply where communications by former employee's supervisors that employee had failed to fulfill mandatory job requirement and timely respond to inquiries were nothing more than internal personnel matter and not made in connection with matter of public concern); *see also I-10 Colony, Inc. v. Lee*, Nos. 01-14-00465-CV & 01-14-00718-CV, 2015 WL 1869467, at *5 (Tex. App.—Houston [1st Dist.] Apr. 23, 2015, no pet.) (mem. op.) (concluding that plaintiff's fraud claim was not based on communications about defendant's lawyer's services, but rather on allegations that defendant's lawyer fraudulently represented to plaintiff that defendant would comply with previous judgment when defendant had no intention of doing so and, therefore, was not related to service in marketplace so as to fall within scope of TCPA). We conclude that appellants did not establish by a preponderance of the evidence that appellees' libel and business disparagement claims were based on appellants' exercise of their right of free speech. Accordingly, we overrule appellants' first issue.[3]

---

[3] Because appellants did not meet their burden to show that the Act applies to appellees' claims, we need not address their third issue.

## B. Judicial Communications Privilege

In their second issue, appellants contend that the absolute judicial communications privilege renders appellants immune from appellees' claims of libel and business disparagement because the alleged defamatory statements were made in reference to a contemplated judicial proceeding.

Communications made in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made. *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982); *Daystar Residential, Inc. v. Collmer*, 176 S.W.3d 24, 27 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). The privilege extends not only to statements made during litigation, but also to statements made in contemplation of and preliminary to judicial proceedings. *Collmer*, 176 S.W.3d at 27. However, the issue of whether the absolute judicial communications privilege bars appellees' claims does not bear on our determination of whether the TCPA applies in the first instance and, therefore, is not properly within the limited scope of this interlocutory appeal. *See Coleman*, 464 S.W.3d at 849–50 (concluding that question of whether qualified privilege gave appellants defense to liability was irrelevant to court's determination of whether TCPA applied to appellee's suit); *Sheffield*, 2014 WL 411672, at *4 (noting that interlocutory appeals are allowed

only in limited situations and, therefore, appellate courts strictly construe statute permitting such appeals).  We overrule appellants' second issue.

In summary, appellants did not meet their burden to prove that their communications were made in the exercise of their right of free speech because the communications did not involve a matter of public concern.  We conclude that the trial court did not err in denying appellants' motion to dismiss appellees' libel and business disparagement claims under the TCPA.

## Conclusion

We affirm the trial court's order denying the motion to dismiss.


Russell Lloyd
Justice

Panel consists of Justices Keyes, Massengale, and Lloyd.