**Motions for Rehearing Overruled as Moot; Opinion of August 11, 2016, Withdrawn; Affirmed in Part, Reversed and Remanded in Part; and Substitute Opinion filed November 22, 2016.**



In The

# Fourteenth Court of Appeals

### NO. 14-15-00550-CV

## JACK N. MCCRARY AND SUZANNE F. MCCRARY, Appellants

### V.

## WILLIAM A. HIGHTOWER, UBS FINANCIAL SERVICES, INC., B.B. TULEY, BRIAN DAVIDSON D/B/A PANORAMIC INVESTIGATIONS, Appellees

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2014-40928**

## S U B S T I T U T E   O P I N I O N

Appellants Jack and Suzanne McCrary appeal from a series of judgments on the pleadings in favor of appellees UBS Financial Services, Inc., Brian Davidson d/b/a Panoramic Investigations, William A. Hightower, and B.B. Tuley. We previously issued an opinion affirming the judgment in favor of Davidson and

reversing the judgments in favor of UBS, Hightower, and Tuley. UBS, Hightower, and Tuley filed motions for rehearing. We withdraw our original opinion and issue this substitute opinion affirming the judgments in favor of UBS and Davidson and reversing the judgments in favor of Hightower and Tuley. We overrule the motions for rehearing as moot.

## Factual and Procedural Background

Appellants Jack and Suzanne McCrary filed an original petition asserting claims of defamation, negligence, gross negligence, and civil conspiracy against appellees William A. Hightower, UBS Financial Services, Inc., B.B. Tuley, and Brian Davidson d/b/a Panoramic Investigations (hereafter, "Davidson"). In their original petition, the McCrarys alleged that Hightower, Tuley, and Davidson had engaged in a "smear campaign" to damage Jack's reputation.[1] The McCrarys argued that, as Hightower's then-employer, UBS was liable for Hightower's actions under a theory of *respondeat superior*.

UBS responded to the McCrarys' original petition with a "Motion to Dismiss Pursuant to Chapter 27 and Motion for Judgment on the Pleadings." In the motions, UBS argued that trial court should either (1) dismiss the McCrarys' suit pursuant to the Texas Citizens' Participation Act (TCPA)[2] or (2) grant summary judgment "on the pleadings" based on the absolute judicial proceedings privilege or the qualified privilege for communications among persons with a common interest. The McCrarys subsequently filed their First Amended Petition,

---

[1] The McCrarys' petition acknowledges that Suzanne was not the subject of any defamatory communications, but nonetheless alleges that Suzanne's "good name and reputation were clearly violated, and, as Mr. McCrary's wife, she also sustained significant damages that are cognizable under Texas law."

[2] "If a legal action is based on, relates to, or is in response to a party's exercise of the right to free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action." Tex. Civ. Prac. & Rem. Code § 27.003(a) (West 2015).

2

which responded to the arguments in UBS's motions. In their First Amended Petition, the McCrarys alleged the following facts:

> William A. Hightower has spearheaded an effort to smear Jack McCrary's name and reputation. On July 18, 2013, Hightower conducted a private meeting of some of his UBS wealth management clients who had, at his behest, invested in one or both of McCrary's start-up companies, IST and/or Reproductive Research Technologies, L.P. [hereinafter "RRT"]. The meeting was held in the offices of Hightower's counsel. These lawyers worked for Hightower, not vice versa. The attendees at the meeting were not yet clients of the law firm, and some never became clients. However, most, or all, of these investors purchased their IST interests through Hightower, after presentations in the UBS office space, and with other UBS employees present.

> At that private meeting, Hightower and Tuley published or republished the libelous *Tuley Report* described in Exhibit A. At the meeting, and at Hightower's urging, Defendant Davidson – who had never even met Jack McCrary, branded him as "delusional." At that meeting, Hightower and his confederates falsely told UBS investors that their money had been lost by McCrary and that their only hope was to institute a lawsuit against two university professors working with IST. This was said even though Tuley had projected potential revenues for the IST company in the hundreds of millions of dollars, and was in the process of finalizing a revised projection of more than one billion dollars. Hightower made these comments to other IST investors prior to this July 18th meeting.

> . . .

> On information and belief, the Defendants and others, in an unlawful conspiracy with them, continued this campaign for many months after the initial July 18th meeting. On information and belief, one of them initiated false charges against McCrary that led to the federal government raid described in the IST pleading. On information and belief, one or more of them also filed an anonymous complaint with the National Institutes of Health that has caused problems with the grant.

> . . .

> The smear campaign continued in a more formal way at a second

meeting of the UBS clients and possibly other limited partners on January 10, 2014. Many of the defamatory statements were republished at that meeting or in personal communications from Hightower or those non-lawyers acting in concert with him following that meeting.

"Exhibit A," which the McCrarys incorporated by reference, is a third-party petition in which IST, Jack's start-up, intervened in pending litigation between Joanna Anderson, et. al, and Manfred and Rainer Fink. The petition describes in further detail the "Tuley Report" and the alleged investor meetings of July 18, 2013 and January 10, 2014. The petition alleges, in relevant part:

> [The Tuley Report] was published by Hightower as a handout at the secret investors' meeting on July 18, 2013. . . . The *Tuley Report* was published by Hightower to the UBS investors either at, or shortly before the July 18th meeting. It is libelous of McCrary, *per se*, and disparaging of IST. As the Court and a Jury will see, Tuley describes the $100,000 that Hightower received as a repayment of a "loan"; but makes no similar reference to the more than $100,000 that McCrary already had invested in or spent for the benefit of the company. Rather, all funds recouped by McCrary or his family partners – which were the actual seller of most of the IST units – were depicted as money distributed "for the benefit of Jack McCrary and family." The picture portrayed is that 65% of the money was used to benefit McCrary personally. It made McCrary look like a thief.

> . . .

> The representations in the *Tuley Report* were compounded by verbal slanders at the investor meeting. The investors were told that their money was gone and that their only hope was to hire Hightower's lawyers to sue McCrary. They were also told that McCrary was a "delusional" and incompetent manager of IST's business.

> . . .

> [Hightower] called a second meeting of his UBS Wealth Management Investors. The meeting was held on January 10, 2014, once again at the office of his counsel. The main agenda was filing a lawsuit. Here, as in the first meeting in July, the investors were told that their investment was essentially "gone" and that their only option to

4

salvage something was to authorize the lawsuit.

> Two documents were prepared by Hightower's lawyers, either at, before, or shortly after the meeting. One disclosed potential "conflicts of interest." It candidly told the potential Plaintiffs that "facts may come to light that would give some or all of you a potential cause of action **against Mr. Hightower."** It also advised that, not only would the law firm **not** investigate or pursue claims against Hightower, but that, IF the Plaintiffs subsequently decided to pursue such claims, the law firm would actually represent Hightower against them. . . . The engagement letter authorized the law firm to sue a number of different people, including Jack McCrary.

After the McCrarys amended their petition, UBS filed a "Motion to Dismiss First Amended Petition and Motion for Judgment on the Pleadings," in which it again argued that the trial court should dismiss the case under the TCPA and, in the alternative, should grant summary judgment "on the pleadings" because the facts pleaded by McCrary affirmatively demonstrated that any statements made by Hightower were protected by the absolute judicial proceedings privilege or the qualified common interest privilege. The trial court denied UBS's motion to dismiss under the TCPA, but granted "summary judgment on the pleadings" without specifying on which basis.

After the trial court granted summary judgment in favor of UBS, Davidson also moved for "summary judgment on the pleadings" asserting that his alleged statement—calling Jack "delusional"—was protected by the absolute judicial proceedings privilege and the qualified common interest privilege. The trial court granted the motion, but did not specify on which ground it did so. Hightower and Tuley then moved jointly for "summary judgment on the pleadings" solely on the ground that their alleged communications were protected by the absolute judicial proceedings privilege. The trial court granted Hightower and Tuley's motion.

On the defendants' joint motion, the trial court issued its final judgment

disposing of all claims and parties. The McCrarys timely filed this appeal.

## Analysis

The McCrarys present three issues: (1) whether the district court erred in granting summary judgment without discovery; (2) whether the absolute privilege that protects statements by lawyers and witnesses involved in judicial proceedings extends to extrajudicial statements by non-lawyers; and (3) whether the anti-SLAPP[3] provisions of Chapter 27[4] justify the summary judgment in UBS's favor. For the purpose of our analysis, we combine the McCrarys' first and second issues to determine whether summary judgment was proper as to each party based on the absolute privilege asserted.

As an initial matter, we note that even though both UBS and Davidson asserted two privileges in their motions for summary judgment—the absolute judicial proceedings privilege and the qualified common interest privilege—the McCrarys' appellate briefing addressed only the absolute privilege. The trial court's orders granting summary judgment in favor of UBS and Davidson did not specify on which ground the summary judgments were rendered. "When there are multiple grounds for summary judgment and the order does not specify the ground on which the summary judgment was rendered, the appealing party must negate all grounds on appeal." *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 898 (Tex. App.—Houston [14th Dist.] 2002, no pet.). "If summary judgment may have been rendered, properly or improperly, on a ground not challenged, the judgment must be affirmed." *Id.* Because McCrary fails to negate all grounds asserted by UBS and Davidson in their motions for summary judgment, we must

---

[3] "SLAPP" is an acronym for "Strategic Lawsuits Against Public Participation." *Jardin v. Marklund*, 431 S.W.3d 765, 769 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

[4] Tex. Civ. Prac. & Rem. Code § 27.001 *et seq.* (West 2015).

6

affirm the trial court's grants of summary judgment as to UBS and Davidson.

Having affirmed the summary judgments in favor of UBS and Davidson, we now determine whether the court erred in granting Hightower and Tuley's combined motion for summary judgment based on the absolute judicial proceedings privilege.

**Standard of review**

We review a grant of summary judgment *de novo*. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 447, 481 (Tex. 2015). Hightower and Tuley did not style their motion as a "traditional" motion for summary judgment pursuant to Texas Rule of Civil Procedure 166a(c), nor did they style their motion as a "no-evidence" motion pursuant to Rule 166a(i). Rather, the defendants moved for summary judgment "on the pleadings" based on the theory that the McCrarys had "pleaded [themselves] out of court" with facts that affirmatively negated their causes of action. *See Tex. Dept. of Corrections v. Herring*, 513 S.W.2d 6, 9 (Tex. 1974); *Trail Enters. v. City of Houston*, 957 S.W.2d 625, 632 (Tex. App.—Houston [14th Dist.] 1997, pet. denied).[5]

The motion was not explicitly characterized as a "no-evidence" motion for

---

[5]We first note that appellees provide no authority for their assertion that summary judgment on the pleadings, without preliminary special exceptions, is an appropriate procedural vehicle in the context of the judicial proceedings privilege. Texas does not recognize general demurrer and, therefore, summary judgment on the pleadings without a prior special exception is proper in only the rarest cases. *See* Hon. David Hittner & Lynne Liberato, *Summary Judgments in Texas: State and Federal Practice*, 52 Hous. L. Rev. 773, 793-95 (2015). One such case is limitations; our court has held that a plaintiff may plead itself out of court by pleading facts establishing limitations has run. *See Trail Enterprises, Inc. v. City of Houston*, 957 S.W.2d 625, 632 (Tex. App.—Houston [14th Dist.] 1997, pet. denied). However, this court also has held that any complaint that the trial court improperly granted summary judgment on the pleadings must be raised in the trial court. *See Warwick Towers Council of Co-Owners ex rel. St. Paul Fire & Marine Ins. Co. v. Park Warwick, L.P.*, 298 S.W.3d 436, 444 (Tex. App.—Houston [14th Dist.] 2009, no. pet.). As appellants did not challenge appellees' motion for summary judgment on the pleadings on this basis, we need not decide the question here.

summary judgment under Rule 166a(i), and we conclude that it is a "traditional" motion for summary judgment. *Adams v. Reynolds Tile and Flooring, Inc.*, 120 S.W.3d 417, 420 (Tex. App.—Houston [14th Dist.] 2003, no pet.). A "traditional" motion for summary judgment may be filed "at any time"; there is no requirement that the motion be filed "after an adequate time for discovery." *Compare* Tex. R. Civ. P. 166a(c) *with id.* 166a(i). A party moving for summary judgment under Rule 166a(c) "has the burden to prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Byrd*, 467 S.W.3d at 481; Tex. R. Civ. P. 166a(c).

**The absolute privilege**

"Texas courts have long recognized that an absolute privilege extends to publications made in the course of judicial and quasi-judicial proceedings— meaning that any statement made in the trial of any case, by anyone, cannot constitute the basis for a defamation action, or any other action." *Wilkinson v. USAA Fed. Savs. Bank Trust Servs.*, No. 14-13-00111-CV, 2014 WL 3002400, at *6 (Tex. App.—Houston [14th Dist.] July 1, 2014, pet. denied). "Anyone" includes judges, jurors, counsel, parties, or witnesses. *Id.* at *6. "The judicial proceedings privilege is tantamount to immunity; where there is an absolute privilege, no civil action or damages for oral or written communications will lie, even though the language is false and uttered or published with express malice." *Id.* The privilege may also extend to communications made prior to the start of a judicial proceeding; the test for whether the privilege extends to such a communication "entails both subjective and objective components." *Shell Oil Co. v. Writt*, 464 S.W.3d 650, 655 (Tex. 2015). However, the privilege applies "only when a communication has some relation to a proceeding that is *actually contemplated* in good faith and under serious consideration by the witness or

8

possible party to the proceeding." RESTATEMENT (SECOND) OF TORTS § 588 cmt. e (AM. LAW INST. 1977); *Writt*, 464 S.W.3d at 655. In determining whether the statement at issue is within the bounds of the absolute privilege, we consider the entire communication in its context. *Fitzmaurice v. Jones*, 417 S.W.3d 627, 633 (Tex. App.—Houston [14th Dist.] 2013, no pet.). We must extend the privilege to any statement that bears some relation to the proceeding and must resolve all doubt in favor of the privilege. *Id.*

**The pleadings do not affirmatively demonstrate that the absolute privilege applies.**

It is not evident from the face of the McCrarys' live pleadings—their First Amended Petition and Exhibit A—that the communications alleged are protected by the absolute judicial proceedings privilege. The pleadings are speculative regarding what was said in the "secret investors' meeting" and in Tuley's "secret report." The pleadings contain no documentation of the 2013 or 2014 investor meetings, transcripts of statements made at the meeting, or a copy of the report that Tuley allegedly presented "at, or shortly before," the 2013 meeting. Likewise, the context of these "secret" communications is minimally developed. Without adequate context, the court cannot reasonably determine whether the communications relate to a particular judicial proceeding. The McCrarys' bare allegation that the "main agenda" of one or both of the investor meetings was filing a lawsuit does not affirmatively establish that the meetings—and any statements made therein—bore any relation to a particular judicial proceeding that was under "serious consideration at the time the communication was made." *Writt*, 464 S.W.3d at 665. Several potential judicial proceedings are mentioned in the McCrarys' pleadings—a lawsuit against Jack, a lawsuit against Hightower, and a lawsuit against two professors. However, the pleadings do not anchor the defamatory communications to any particular lawsuit. While it is apparent from

the incorporation of IST's third-party petition (Exhibit A) that the lawsuit against the two professors—Manfred and Rainer Fink—was actually filed, the pleadings do little to affirmatively establish any nexus between statements made by Hightower or Tuley and that particular lawsuit.

While it is possible that the privilege also may apply to statements related to unrealized judicial proceedings, "the possibility of a proceeding must have been a serious consideration at the time the communication was made." *Writt*, 464 S.W.3d at 655. The pleadings do not affirmatively establish that Hightower or Tuley made any statements "in contemplation of [or] preliminary to" any nascent lawsuits against Jack or Hightower. *Daystar Residential, Inc. v. Collmer*, 176 S.W.3d 24, 27 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). Because the McCrarys' pleadings do not affirmatively put any defamatory communications into the context of a judicial proceeding either in progress or under serious consideration, they cannot suffice to establish the application of the absolute privilege.

Despite the factual deficiency of McCrarys' pleadings, Hightower and Tuley urge us to apply a more relaxed absolute privilege that is "all-encompassing." The defendants cite cases that have expanded the absolute privilege to encompass statements made by non-lawyers and statements made preliminary to judicial proceedings that have yet to occur or never come to fruition. *James v. Brown*, 637 S.W.2d 914, 917 (Tex. 1982); *Collmer*, 176 S.W.3d at 28. Regardless of how all-encompassing or expansive the privilege may be, it cannot support a summary judgment when the relevant facts have not yet been established. In both *James* and *Collmer*, the courts were able to connect specific statements to particular judicial proceedings that were either in progress or were obviously under serious contemplation. *James* involved a defamation lawsuit brought by a woman who

was involuntarily hospitalized against the doctors who evaluated her and recommended her hospitalization. 637 S.W.2d at 916. The doctors filed reports with the probate court and wrote letters about the plaintiff as part of the statutory mental health proceeding. *Id.* The trial court granted the doctors' motion for summary judgment in which they asserted that their statements were protected by the absolute privilege. *Id.* The Texas Supreme Court affirmed the summary judgment and held that the doctors' letters were privileged witness statements related to the mental health proceeding in probate court. *Id.* at 917. In *Collmer*, an attorney was sued for business disparagement after he made comments in the *Houston Chronicle* alleging wrongdoing on the part of a residential treatment home and stating that evidence of that wrongdoing would "bolster[] a civil lawsuit he plan[ned] to file in the near future." 176 S.W.3d 26. The attorney asserted the absolute privilege and moved for summary judgment, which the trial court granted. *Id.* at 27. Our sister court affirmed the summary judgment and held that, because it was "clear that a suit was being contemplated" and the attorney's statement "bore some relationship to the proposed litigation and furthered his representation of his client," the statements were absolutely privileged. *Id.* at 28. This case is distinguishable. Here, we are not able to determine from the face of the McCrarys' pleadings whether the content of any communications alleged are related to any actual or contemplated judicial proceedings.

Instead, we find *Helfand v. Coane* to be instructive. 12 S.W.3d 152 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). In *Helfand*, the plaintiff, an attorney, alleged that the defendant, a fellow attorney, had defamed him in a letter that accused him, in part, of lying to several federal judges. *Id.* at 154. The defendant moved for summary judgment. *Id.* at 155. The plaintiff filed a motion for continuance, but the trial court ordered that discovery be stayed until it ruled on

11

the defendant's motion for summary judgment. *Id.* Considering only the pleadings, the trial court granted summary judgment on the ground that the plaintiff's defamation claim was barred by the absolute judicial proceedings privilege. *Id.* The court of appeals concluded that summary judgment was granted prematurely because the question of absolute privilege could not be answered without further discovery to establish the context of the statements.[6] This case is similar. Even taking the McCrarys' speculative pleadings as true, the absolute privilege cannot be established without further factual development. The question of whether the privilege applies, while a question of law, is ultimately fact-intensive and dependent. *Id.* at 157. The McCrarys' pleadings do not answer that question in a manner that satisfies the summary judgment standard. Hightower and Tuley did not conclusively prove entitlement to judgment as a matter of law based on the absolute judicial proceedings privilege. Accordingly, the court erred in granting summary judgment in favor of Hightower and Tuley.

Because we affirm the trial court's summary judgment in favor of UBS based on McCrary's failure to negate all summary-judgment grounds asserted by UBS, we need not address the McCrarys' third issue.[7]

---

[6] Because the defamatory statements were made by an attorney, the court of appeals held that discovery was needed in order to establish, pursuant to *Russell v. Clark*, 620 S.W.2d 865, 869 (Tex. App.—Dallas 1981, writ ref'd n.r.e.), "(1) that the act to which the privilege applied must bear *some relationship* (2) to a judicial proceeding in which the attorney is employed, and (3) the act must be in *furtherance* of that representation." *Helfand*, 12 S.W.3d at 157.

[7] The McCrarys' third issue speculates that the anti-SLAPP provisions of the TCPA may have influenced the trial court to grant summary judgment in UBS's favor. However, the TCPA does not authorize trial courts to grant summary judgment. Rather, it provides a unique mechanism for dismissal based on certain statutory criteria. Tex. Civ. Prac. & Rem. Code § 27.003(a) ("If a legal action is based on, relates to, or is in response to a party's exercise of the right to free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action."). Moreover, the trial court expressly denied UBS's Chapter 27 motion to dismiss, which we assume disposed of UBS's assertion of Chapter 27 protection.

## Conclusion

We affirm the trial court's grants of summary judgment in favor of UBS Financial Services, Inc. and in favor of Brian Davidson d/b/a Panoramic Investigations.  We reverse the trial court's grant of summary judgment in favor of Hightower and Tuley and remand for further proceedings.


/s/    Marc W. Brown
        Justice


Panel consists of Chief Justice Frost and Justices McCally and Brown.

13