Opinion issued July 1, 2021



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00439-CV

————————————

**CHRISTOPHER SCOTT BRANN, Appellant**

**V.**

**CARLOS GUIMARAES AND JEMIMA GUIMARAES, Appellees**

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-11003**

---

## MEMORANDUM OPINION ON REHEARING

We issued our original memorandum opinion in this case on September 10, 2020. Appellees, Carlos and Jemima Guimaraes, filed a motion for en banc reconsideration. We withdraw our original opinion and issue this substitute opinion

in its stead, thereby mooting the Guimaraeses' en banc motion. The disposition remains the same.

This is an accelerated interlocutory appeal from the trial court's denial of a motion to dismiss under the Texas Citizens Participation Act.[1] TEX. CIV. PRAC. & REM. CODE §§ 27.008(b), 51.014(a)(12). The underlying dispute arises from a widely publicized incident of international parental kidnapping.

In 2013, while in the midst of an acrimonious divorce from her then-husband, Christopher Brann, Marcelle Guimaraes obtained permission from the Texas trial court to take the couple's only child, Nathaniel,[2] to Brazil to attend a family wedding. Marcelle and Nathaniel left for Brazil as planned, but they did not return. Instead, Marcelle (1) secured a job at and enrolled Nathaniel in a Brazilian school run by her family, (2) initiated a separate legal action in Brazilian state court, and (3) ultimately obtained an order from that court awarding her custody of Nathaniel.

Chris alleged that Marcelle did all of this with the help of her parents, Carlos and Jemima Guimaraes, who (1) falsely represented to Chris that Marcelle and

---

[1]    In 2019, the Legislature amended certain provisions of the TCPA. Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–9, § 12 (codifying amendments at TEX. CIV. PRAC. & REM. CODE §§ 27.001, 27.003, 27.005–.007, 27.0075, 27.009–.010). The amendments became effective September 1, 2019. *Id.* at § 11. Because this suit was filed before the effective date of the amendments, this suit is governed by the prior version of the TCPA. *See id.* Unless otherwise indicated, all our citations and analyses apply the prior version of the Act.

[2]    To protect the child's privacy and for ease of reading, we use "Nathaniel" as a pseudonym. *See generally* TEX. R. APP. P. 9.9.

Nathaniel would not be able to return to Texas as planned because Marcelle had unexpectedly developed an illness requiring immediate treatment in Brazil (when in fact Marcelle was healthy and capable of returning to Texas with Nathaniel), (2) falsely represented to Chris that Marcelle and Nathaniel would return to Texas as soon as Marcelle recovered (when in fact they knew Marcelle intended on staying in Brazil with Nathaniel indefinitely), and (3) purchased return plane tickets for Marcelle and Nathaniel as part of the coverup. The Guimaraeses categorically denied Chris's allegations.

When the Guimaraeses returned to the United States, they were indicted and tried in federal district court for conspiracy to commit international parental kidnapping and aiding and abetting international parental kidnapping. The jury found them not guilty of the first charge but guilty of the second charge. The district court entered a judgment of conviction in accordance with the jury's verdict and sentenced both of them to terms of confinement. They did not appeal their convictions.

The Guimaraeses then filed this civil suit against Chris, asserting claims for fraud on the court, false imprisonment, slander and slander per se, and violations of the Penal Code. In support of their claims, the Guimaraeses allege that Chris falsely testified about the circumstances under which Marcelle abducted Nathaniel and the extent to which the Guimaraeses were involved, resulting in their wrongful

convictions and damage to their reputations. In response, Chris filed a motion to dismiss under the TCPA, which the trial court denied.

We hold that (1) Chris met his initial burden to show that the Guimaraeses' legal action is based on, relates to, or is in response to his exercise of the right to petition, (2) the Guimaraeses have failed to meet their burden to establish that their legal action is exempt from the TCPA, (3) the Guimaraeses have failed to meet their burden to establish a prima facie case for their claims for violations of the Penal Code, and (4) Chris has met his burden to show that the Guimaraeses' remaining claims are barred by valid defenses, namely, the doctrine of collateral estoppel and the absolute and conditional communicative privileges.

Accordingly, we reverse the order of the trial court and remand the cause for the entry of a judgment of dismissal and a determination of fees, costs, expenses, and sanctions to be awarded to Chris under the TCPA.

## Background

This appeal involves five key individuals: appellant, Chris Brann; Chris's ex-wife, Marcelle Guimaraes; their minor son, Nathaniel Brann; and Nathaniel's maternal grandparents, appellees, Carlos and Jemima Guimaraes. Chris is a citizen of the United States. Everyone else is a citizen of both the United States and Brazil. *Marcelle and Chris marry in Texas, and Nathaniel is born in Texas*

Marcelle and Chris married in 2008 in Harris County, Texas, and Nathaniel was born roughly one year later, also in Harris County. By the time Nathaniel was born, the couple was experiencing marital problems. The problems arose from Chris's pornography addiction and demanding work schedule, on the one hand, and Marcelle's explosive and controlling personality, on the other hand. They attended therapy, both as a couple and individually. But the situation did not improve. Instead, it got worse.

*Marcelle files for divorce in Texas state court*

In September 2012, Marcelle filed a petition for divorce in Texas state court. At the time, Chris, Marcelle, and Nathaniel still resided in Harris County.

In January 2013, the trial court signed an agreed temporary order, which (1) appointed both Marcelle and Chris as Nathaniel's temporary joint managing conservators, (2) designated Harris County as Nathaniel's primary residence, and (3) prohibited either party from removing Nathaniel from Harris County for the purpose of changing his primary residence. Both Marcelle and Chris signed the order.

*While the divorce is pending, Marcelle kidnaps Nathaniel*

In May 2013, Marcelle and Chris entered into a Rule 11 agreement, allowing Marcelle to travel to Brazil with Nathaniel from July 2, 2013, through July 20, 2013. The purported reason for the trip was to attend Marcelle's brother's wedding. Under

the agreement, Chris was to have possession of Nathaniel after his return from Brazil.

Marcelle and Nathaniel traveled to Brazil as planned on July 2, 2013. As the date of their scheduled return drew near, the Guimaraeses informed Chris that Marcelle and Nathaniel would not be able to return to Texas as planned because Marcelle had become ill and required immediate medical treatment in Brazil. But they assured Chris that Marcelle and Nathaniel would return to Texas as soon as Marcelle recovered. The Guimaraeses later informed Chris that they had purchased new return plane tickets for Marcelle and Nathaniel and even provided him proof of purchase. But Marcelle and Nathaniel did not return. Instead, Marcelle initiated judicial proceedings in Brazilian state court, which granted Marcelle temporary custody of Nathaniel later that month.

### Chris obtains a divorce and attempts to regain possession of Nathaniel

When Chris realized Marcelle did not intend to return with Nathaniel, he filed an emergency motion to modify the trial court's agreed temporary order. In August 2013, the trial court granted Chris's motion and (1) appointed Chris as Nathaniel's sole temporary managing conservator, (2) granted Chris the right to possession of Nathaniel at all times, (3) suspended Marcelle's right to possession of or access to Nathaniel, and (4) ordered Marcelle to deliver and surrender Nathaniel to Chris.

Marcelle did not comply with the trial court's orders. Instead, she remained in Brazil with Nathaniel.

In October 2013, Chris filed a petition under the Hague Convention requesting the return of Nathaniel to the United States. The petition was transmitted to the Brazilian Central Authority and to the Brazilian Federal Courts. The petition was ultimately denied in July 2015.

Meanwhile, back in Texas, the divorce and custody case proceeded to trial. In November 2015, the Texas trial court signed its final decree of divorce. In the final decree, the trial court (1) ordered that Chris and Marcelle be divorced, (2) named Chris and Marcelle joint managing conservators of Nathaniel, (3) granted Chris the exclusive right to designate Nathaniel's primary residence, (4) established possession and access to Nathaniel, and (5) awarded Chris damages, attorney's fees, and costs on his tort claims against Marcelle for interference with possessory rights. Marcelle appealed from the trial court's decree of divorce. We affirmed. *See Guimaraes v. Brann*, 583 S.W.3d 652 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

After the divorce, Chris continued his efforts to regain possession of Nathaniel. As relevant here, Chris testified before two legislative committees—the United States House of Representatives Committee on Foreign Affairs and the United States Senate Committee on the Judiciary—and filed a criminal complaint

against Marcelle and the Guimaraeses with the United States Attorney's Office for the Southern District of Texas.

***The Guimaraeses are indicted, tried, and convicted of aiding and abetting international parental kidnapping***

Chris's criminal complaint led to an investigation of the Guimaraeses, which in turn led to their indictment for conspiracy to commit international parental kidnapping and aiding and abetting international parental kidnapping. The Guimaraeses pleaded not guilty, and the case proceeded to trial.

At trial, the State presented evidence showing that, after Marcelle and Nathaniel arrived in Brazil, the Guimaraeses (1) helped Marcelle secure a job at and enroll Nathaniel in a Brazilian school run by the Guimaraes family, (2) helped Marcelle initiate and pursue the parallel Brazilian state court custody proceedings, (3) represented to Chris that Marcelle and Nathaniel would not be able to return to Texas as planned because Marcelle had suddenly become ill, (4) further represented to Chris that Marcelle and Nathaniel would return to Texas as soon as Marcelle recovered, and (5) purchased and showed Chris new return plane tickets for Marcelle and Nathaniel's ostensible flight back to Texas. The State argued that this evidence showed that the Guimaraeses helped Marcelle plan and execute Nathaniel's abduction and then enabled her to remain in Brazil with Nathaniel in violation of the Texas trial court's orders. The Guimaraeses asserted as an affirmative defense and

presented evidence that Marcelle had fled from a pattern of domestic abuse and violence.

The jury rejected the Guimaraeses' defense, found them not guilty of conspiracy, but found them guilty of aiding and abetting. The district court then held a sentencing hearing and heard Chris's victim-impact statement. After the hearing, the district court sentenced Carlos to three months' confinement, sentenced Jemima to one month's confinement, ordered that they each be fined $75,000, and further ordered that they pay Chris $36,000 in restitution.

### The Guimaraeses file this civil suit against Chris

In February 2019, the Guimaraeses filed this civil suit against Chris. They asserted five claims: (1) fraud on the court, (2) false imprisonment, (3) slander and slander per se, (4) violations of Penal Code, section 37.08 (establishing the offense of making a false police report), and (5) violations of Penal Code, section 20.02 (establishing the offense of unlawful restraint).

The overarching theory of their suit is that Chris made false statements and provided false testimony to various courts, law enforcement agencies, and legislative bodies as part of an elaborate scheme to exact revenge on them and to enrich himself, resulting in their wrongful convictions and damage to their reputations. Specifically, the Guimaraeses allege that:

- At the divorce trial, Chris falsely denied Marcelle's allegations of Chris's domestic violence and pornography addiction and falsely portrayed Marcelle

9

as violent and abusive to obtain a favorable decree of divorce awarding him custody of Nathaniel and finding Marcelle's allegations against him to be false and malicious.

- Chris then used that divorce decree to bolster the false accusations made in the criminal complaint he submitted to the U.S. Attorney's Office, leading to the Guimaraeses' wrongful arrest and indictment.

- After the Guimaraeses were indicted, Chris went on a public relations and lobbying campaign, falsely testifying before two legislative committees that Marcelle, Carlos, and Jemima had "pre-meditated [Nathaniel]'s abduction."

- When the Guimaraeses' case went to trial, Chris provided false testimony during the guilt-innocence phase, where he again falsely denied Marcelle's allegations of domestic violence and pornography addiction and again falsely portrayed Marcelle as violent and abusive, causing the jury to reject the Guimaraeses' affirmative defense (that Marcelle had fled from a pattern of domestic abuse and violence) and find them guilty of aiding and abetting international parental kidnapping.

- Finally, during the Guimaraeses' sentencing hearing, Chris made a victim-impact statement in which he falsely testified that the Guimaraeses (1) spent "months, if not years" "carefully plan[ning]" Nathaniel's abduction, (2) lied to courts in the United States about whether Marcelle intended to return with Nathaniel, (3) "employed their incredible political influence to change" adverse rulings made by courts in Brazil, and (4) hired security guards to "follow" and "harass" Chris and his family when they visited Nathaniel in Brazil.

The Guimaraeses allege that because of Chris's false statements and testimony, they were wrongfully convicted, suffered damage to their reputations, and incurred significant attorney's fees and other costs.

10

*Chris moves to dismiss the Guimaraeses' claims under the TCPA*

In response to the Guimaraeses' petition, Chris filed a motion to dismiss the Guimaraeses' claims under the TCPA. After a hearing, the trial court denied Chris's motion.

Chris now appeals.

**Motion to Dismiss**

On appeal, Chris contends that the trial court erred in denying his motion to dismiss. Specifically, Chris argues that the trial court erred because (1) he met his initial burden to show that the Guimaraeses' claims are based on, relate to, or are in response to his exercise of the right to petition, (2) the Guimaraeses failed to establish that their claims are exempt from the TCPA, (3) the Guimaraeses failed to establish a prima facie case for their claims, and (4) even if the Guimaraeses could establish a prima facie case for their claims, Chris has established valid defenses, namely, collateral estoppel and absolute and conditional communicative privileges.

**A.    Applicable law and standard of review**

The TCPA provides an expedited procedure for the early dismissal of groundless legal actions that impinge on certain statutorily defined rights, namely, the right of free speech, the right to petition, and the right of association. TEX. CIV. PRAC. & REM. CODE §§ 27.001(2)–(4), 27.003; *Greer v. Abraham*, 489 S.W.3d 440, 442 (Tex. 2016). Under the TCPA, if a legal action is "based on, relates to, or is in

11

response to" a defendant's exercise of these rights, the defendant may file a motion to dismiss the action. TEX. CIV. PRAC. & REM. CODE § 27.003(a). Once a motion to dismiss is filed, a burden-shifting mechanism goes into effect. *See In re Lipsky*, 460 S.W.3d 579, 586–87 (Tex. 2015).

The defendant has the initial burden to show by a "preponderance of the evidence" that the plaintiff's legal action is "based on, relates to, or is in response to" the defendant's exercise of (1) the right of free speech, (2) the right to petition, or (3) the right of association. TEX. CIV. PRAC. & REM. CODE § 27.005(b). If the defendant meets his initial burden, the burden shifts to the plaintiff to either (1) establish that the legal action is exempt from the Act, *see id.* § 27.010 (listing exempted legal actions), or (2) establish by "clear and specific evidence a prima facie case for each essential element of the claim in question[,]" *id.* § 27.005(c). However, if the plaintiff establishes a prima facie case, the defendant can still prevail by establishing by "a preponderance of the evidence each essential element of a valid defense to the [plaintiff]'s claim." *Id.* at § 27.005(d). If the defendant prevails, the trial court must award to the defendant (1) court costs, attorney's fees, and expenses and (2) sanctions against the plaintiff sufficient to deter future similar actions. *Id.* § 27.009(a).

When determining whether to dismiss the legal action, the trial court must consider "the pleadings and supporting and opposing affidavits stating the facts on

which the liability or defense is based." *Id.* § 27.006(a). The trial court may allow specified and limited discovery relevant to the motion on a showing of good cause, but otherwise all discovery in the legal action is suspended until the court has ruled on the motion to dismiss. *Id.* §§ 27.003(c), 27.006(b).

We review de novo a trial court's denial of a motion to dismiss under the TCPA. *Holcomb v. Waller Cty.*, 546 S.W.3d 833, 839 (Tex. App.—Houston [1st Dist.] 2018, pet. denied).

## B. Analysis

### 1. Application

We begin by considering de novo whether Chris met his initial burden to show by a preponderance of the evidence that the Guimaraeses' legal action is based on, relates to, or is in response to his exercise of the right to petition. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b)(2); *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019) (whether movant meets initial burden is question of law reviewed de novo).

Under the TCPA, the "[e]xercise of the right to petition" is broadly defined to include (among other things):

- "a communication in or pertaining to . . . a judicial proceeding [or] a legislative proceeding, including a proceeding of a legislative committee;"
- "a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;"

13

- "a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;" and

- "a communication reasonably likely to enlist public participation in an effort to effect consideration of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding . . . ."

*Id.* § 27.001(4)(A)(i), (iv), (B)–(D); *see Porter-Garcia v. Travis Law Firm, P.C.*, 564 S.W.3d 75, 84 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("The TCPA broadly defines '[e]xercise of the right to petition' to include a communication pertaining to a judicial, official, or governmental department proceeding."). A "[c]ommunication" is in turn defined as "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." TEX. CIV. PRAC. & REM. CODE § 27.001(1).

Here, the Guimaraeses' claims are based on four categories of communications. We discuss each category in turn.

First, the Guimaraeses base their claims on testimony Chris provided at two trials, specifically, his divorce trial and the Guimaraeses' joint criminal trial. The Guimaraeses allege that at his divorce trial, Chris falsely denied Marcelle's allegations of Chris's domestic violence and pornography addiction and falsely portrayed Marcelle as violent and abusive. The Guimaraeses allege that Chris repeated this false testimony during the guilt-innocence phase of their joint criminal trial. The Guimaraeses further allege that Chris provided additional false testimony

14

during their sentencing hearing, falsely testifying that they (1) helped plan Nathaniel's abduction, (2) lied to courts in the United States about whether Marcelle intended on returning with Nathaniel, (3) used their political influence to change adverse rulings made by courts in Brazil, and (4) hired security guards to follow and harass Chris and his family when they visited Nathaniel in Brazil. The testimony provided by Chris at these two trials qualifies as "communication[s] in or pertaining to . . . judicial proceeding[s]." *Id.* § 27.001(4)(A)(i); *see also Beving v. Beadles*, 563 S.W.3d 399, 406 (Tex. App.—Fort Worth 2018, pet. denied) (holding that affidavit and deposition testimony of law firm's former comptroller in underlying action between law firm and former partners constituted exercise of comptroller's right to petition).

Second, the Guimaraeses base their claims on testimony Chris provided at two legislative committee hearings, specifically, a hearing before the House Committee on Foreign Affairs and a hearing before the Senate Committee on the Judiciary. The Guimaraeses allege that at these hearings, Chris falsely testified that the Guimaraeses had premeditated Nathaniel's abduction. The testimony provided by Chris at these legislative committee hearings qualifies as "communication[s] in or pertaining to . . . legislative proceeding[s]." TEX. CIV. PRAC. & REM. CODE § 27.001(4)(A)(iv).

15

Third, the Guimaraeses base their claims on the statements Chris made in the criminal complaint he submitted to the U.S. Attorney's Office. In their appellate brief, the Guimaraeses do not identify the specific statements in Chris's criminal complaint that are allegedly false. But they contend that the complaint—and the statements made therein—led to their wrongful arrest and indictment. "Filing a police report, whether true or false, implicates a person's right to petition the government." *Murphy USA, Inc. v. Rose*, No. 12-15-00197-CV, 2016 WL 5800263, at *3 (Tex. App.—Tyler Oct. 5, 2016, no pet.) (mem. op.). Thus, the statements in Chris's criminal complaint, regardless of their content, qualify as "communication[s] that [are] reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding." *Id.* § 27.001(4)(C).

Fourth, the Guimaraeses base their claims on the statements Chris's representative made to the media after the jury found them guilty of aiding and abetting international parental kidnapping. The Guimaraeses allege that Chris's representative falsely stated that the Guimaraeses had been directly responsible for Nathaniel's abduction, were currently enabling Marcelle to continue living in Brazil with Nathaniel, and were able to act with total impunity in Brazil. The statements made by Chris's representative to the media qualify as (1) "communication[s] in connection with an issue under consideration or review by a legislative, executive,

16

judicial, or other governmental body or in another governmental or official proceeding;" *id.* § 27.001(4)(B); (2) "communication[s] that [are] reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;" *id.* § 27.001(4)(C); and (3) "communication[s] reasonably likely to enlist public participation in an effort to effect consideration of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;" *id.* § 27.001(4)(D).

In sum, the Guimaraeses' claims are based on four categories of communications: (1) the testimony Chris provided at the two trials, (2) the testimony Chris provided at the two legislative committee hearings, (3) the statements Chris made in his criminal complaint, and (4) the statements Chris's representative made to the media after the Guimaraeses were found guilty of aiding and abetting international parental kidnapping. Each category qualifies as the exercise of the right to petition.

We hold that Chris has met his initial burden to show by a preponderance of the evidence that the Guimaraeses' legal action is based on, relates to, or is in response to Chris's exercise of the right to petition.

## 2. Exemption

Next, we consider de novo whether the Guimaraeses met their burden to prove their legal action is exempt from the TCPA. *See* TEX. CIV. PRAC. & REM. CODE § 27.010; *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 89 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (burden of proving applicability of exemption falls on party asserting it). The Guimaraeses contend that two exemptions apply: (1) an exemption for legal actions seeking recovery for bodily injury; and (2) an exemption for legal actions based on common law fraud. We consider each exemption in turn.

### a. Bodily injury

The TCPA "does not apply to a legal action seeking recovery for bodily injury, wrongful death, or survival or to statements made regarding that legal action." TEX. CIV. PRAC. & REM. CODE § 27.010(c). The Guimaraeses argue that this bodily-injury exemption applies to their legal action because they seek to recover damages for their false imprisonment, which they characterize as an injury to their bodies. We disagree.

As one court of appeals recently explained, "bodily injury" denotes "physical damage to a person's body." *Cavin v. Abbott*, 545 S.W.3d 47, 57 (Tex. App.—Austin 2017, no pet.) (quoting BLACK'S LAW DICTIONARY 906 (10th ed. 2014)); *see also Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 820–24 (Tex. 1997)

18

(construing standard homeowners' insurance policy—which defined "'bodily injury' as 'bodily harm, sickness or disease'"—as "not includ[ing] purely emotional injuries" and as "unambiguously requir[ing] an injury to the physical structure of the human body"); *id.* at 823–24 ("Our decision comports with the commonly understood meaning of 'bodily,' which implies a physical, and not purely mental, emotional, or spiritual harm.").

But here, the Guimaraeses do not allege that their false imprisonment caused physical damage to their bodies. Instead, they allege that it caused them emotional and reputational damages.[3] *Cf. Superior HealthPlan, Inc. v. Badawo*, No. 03-18-00691-CV, 2019 WL 3721327, at *4 (Tex. App.—Austin Aug. 8, 2019, no pet.) (mem. op.) (holding that "brain damage and ongoing pain, suffering, [and] disability" constituted bodily injuries under TCPA); *Kirkstall Rd. Enters., Inc. v. Jones*, 523 S.W.3d 251, 253–54 (Tex. App.—Dallas 2017, no pet.) (holding that gunshot wounds constituted bodily injuries under TCPA); *Cavin*, 545 S.W.3d at 57 (holding that "medical expenses for physical damage and compensation for physical pain" constituted bodily injuries under TCPA). Other courts, moreover, have held

---

[3]     In the prayer of their petition, the Guimaraeses do not specifically request that they be awarded damages for bodily injury, but they do generally request that they be awarded "all available damages." However, such a general request, in the absence of any allegation that they actually suffered bodily injury as a result of their confinement, is insufficient to show the Guimaraeses' legal action seeks recovery for bodily injury.

that the TCPA applies to claims for false imprisonment. *See, e.g.*, *Murphy USA*, 2016 WL 5800263, at \*4.

We hold that the Guimaraeses failed to meet their burden to prove the bodily-injury exemption applies to their legal action.

### b. Fraud

The current version of the TCPA "does not apply to . . . a legal action based on a common law fraud claim." Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 9 (codifying amendment at TEX. CIV. PRAC. & REM. CODE § 27.010(a)(12)). However, the prior version of the TCPA, applicable here, contains no such language. The Guimaraeses nevertheless contend that the prior version exempts legal actions based on common law fraud, including their claim for fraud on the court. They characterize the recently added provision expressly exempting common law fraud claims as a clarification of what the TCPA already exempted rather than the creation of a new exemption altogether. We disagree.

Each version of the TCPA expressly exempts certain claims under a section entitled, appropriately enough, "Exemptions." This shows that when the Legislature intends to exempt a claim from the act, it does so by expressly listing the claim under the "Exemptions" section. For example, the prior version of the TCPA expressly exempts claims "seeking recovery for bodily injury, wrongful death, or survival" and claims "brought under the Insurance Code or arising out of an insurance

contract." TEX. CIV. PRAC. & REM. CODE § 27.010(c), (d). The prior version does not, however, expressly exempt (or otherwise address) claims for common law fraud.

Because common law fraud is not listed among the claims exempted under the prior version of the act, we conclude that the Legislature did not intend for the prior version to exempt such claims. Our conclusion is supported by existing precedent—including mandatory precedent from this Court—construing the prior version of the act as applying to claims for common law fraud. *See, e.g.*, *James v. Calkins*, 446 S.W.3d 135, 147–48 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). And it is supported by the recent amendments' legislative history, which expressly states that the amendments—including the new language exempting claims for common law fraud—only apply prospectively. H.B. 2730, §§ 11–12, 86th Leg., R.S. eff. Sept. 1, 2019 ("The change in law made by this Act applies only to a legal action filed on or after the effective date of this Act [September 1, 2019].").

We hold that the Guimaraeses failed to meet their burden to prove the recently enacted fraud exemption applies to their legal action.

### 3. Prima facie case and defenses

Finally, we consider de novo whether the Guimaraeses met their burden to establish by clear and specific evidence a prima facie case for their claims and, if so,

whether Chris established by a preponderance of the evidence a valid defense to those claims. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c), (d).

### a. Claims for Penal Code violations

The Guimaraeses have asserted two claims for violations of the Penal Code: (1) making a false report to a peace officer in violation of Penal Code, section 37.08, TEX. PENAL CODE § 37.08; and (2) unlawful restraint in violation of Penal Code, section 20.02, *id.* § 20.02. However, it is well-established that "Penal Code violations do not give rise to private causes of action." *LeBlanc v. Lange*, 365 S.W.3d 70, 87 (Tex. App.—Houston [1st Dist.] 2011, no pet.). In their appellate brief, the Guimaraeses contend that they have not actually asserted violations of the Penal Code as private causes of action but only reference these Penal Code provisions to establish the standard of care for their other claims. But in their petition, the Guimaraeses clearly assert violations of Penal Code, sections 37.08 and 20.02, as standalone claims. Because no such claims exist under Texas law, they cannot establish a prima facie case for either purported claim.

### b. Remaining claims

The Guimaraeses' remaining claims are for fraud on the court, false imprisonment, and slander and slander per se. Assuming without deciding the Guimaraeses met their burden to establish a prima facie case for these claims, we hold that Chris is still entitled to their dismissal because he has met his burden to

establish valid defenses to these claims, namely, collateral estoppel and absolute and conditional communicative privileges. We discuss each defense in turn.

### i. Collateral estoppel

We begin with collateral estoppel. Collateral estoppel (also known as issue preclusion) "prevents relitigation of particular issues already resolved in a prior suit." *Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992). It "applies when an issue decided in the first action is actually litigated, essential to the prior judgment, and identical to an issue in a pending action." *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001). "The doctrine is designed to promote judicial efficiency and to prevent inconsistent judgments by preventing any relitigation of an ultimate issue of fact." *Id.*

The Guimaraeses' remaining claims are based on Chris's allegedly false statements and testimony concerning the circumstances surrounding Marcelle's abduction of Nathaniel and the extent to which the Guimaraeses were involved. Specifically, and as discussed at length above, the Guimaraeses contend that Chris falsely stated and testified that: (1) he never physically abused Marcelle, (2) he is not and never has been addicted to pornography, (3) the Guimaraeses helped plan Marcelle's abduction of Nathaniel, (4) the Guimaraeses had been directly responsible for Nathaniel's abduction, (5) the Guimaraeses lied to Chris and to U.S. authorities about whether Marcelle intended to return to the U.S. with Nathaniel, (6)

the Guimaraeses enabled Marcelle to continue living in Brazil with Nathaniel, (7) the Guimaraeses used their political influence to change adverse rulings made by Brazilian courts, (8) the Guimaraeses hired security guards to follow and harass Chris and his family when they visited Nathaniel in Brazil, and (9) the Guimaraeses were able to act with total impunity in Brazil. The Guimaraeses contend that, as a result of Chris's false statements and testimony, they were wrongly indicted and tried for conspiracy to commit international parental kidnapping and aiding and abetting international parental kidnapping and were wrongly convicted of the latter charge.

But because the Guimaraeses did not appeal their convictions, they are collaterally estopped from relitigating whether they were wrongly indicted, tried, and convicted of aiding and abetting. They are likewise collaterally estopped from relitigating any issue essential to their convictions, including, as relevant here, whether they lied to Chris and to U.S. authorities about whether Marcelle intended to return to the U.S. with Nathaniel and whether they enabled Marcelle to continue living in Brazil with Nathaniel. *See Jones v. Hyman*, 107 S.W.3d 830, 832 (Tex. App.—Dallas 2003, no pet.) (holding that defendant's failure to appeal theft conviction collaterally estopped defendant and his mother from asserting wrongful conviction in tort suit against store and witnesses alleged to have committed perjury in identifying defendant in court as perpetrator); *see also Boozier v. Hambrick*, 846

24

S.W.2d 593, 598 (Tex. App.—Houston [1st Dist.] 1993, no writ) (holding that airport superintendent convicted of assaulting airport police officer by grabbing officer's buttocks was estopped from asserting claims alleging officer falsely reported grabbing incident to superiors); *Jackson v. Smith Sec. Serv., Inc.*, 786 S.W.2d 787, 789 (Tex. App.—Houston [1st Dist.] 1990, no writ) (explaining that if plaintiff's shoplifting conviction was affirmed on appeal, trial court's summary judgment dismissing plaintiff's claims alleging store falsely accused plaintiff of shoplifting would also be affirmed). They are not, however, collaterally estopped from relitigating whether they were wrongly indicted and tried for conspiracy—the charge for which the jury found them not guilty. Nor are they estopped from relitigating the issues raised by the evidence presented in support of the conspiracy charge. Thus, collateral estoppel does not bar the Guimaraeses from relitigating the remaining allegations forming the bases of their remaining claims.

We hold that Chris has met his burden to show by a preponderance of the evidence that collateral estoppel is a valid defense to the Guimaraeses' remaining claims to the extent these claims require the parties to relitigate any issue essential to the Guimaraeses' convictions for aiding and abetting international parental kidnapping and the propriety of the convictions themselves.

25

### ii. Communicative privilege

We now consider whether the Guimaraeses' remaining claims—those not barred by collateral estoppel—are barred by absolute and conditional communicative privileges.

Under Texas law, statements made during legislative and judicial proceedings are absolutely privileged; they cannot serve as the basis of a civil action under any circumstances. *Shell Oil Co. v. Writt*, 464 S.W.3d 650, 654 (Tex. 2015); *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 768 (Tex. 1987) ("[A]n absolute privilege confers immunity regardless of motive."). The absolute privilege extends to any statement made by the parties and counsel, so long as the statement "bear[s] some relation" to the proceeding and "further[s]" the party's representation. *Daystar Residential, Inc. v. Collmer*, 176 S.W.3d 24, 28 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

Similarly, statements made in an initial report of an alleged crime to a law enforcement authority are conditionally privileged; they cannot serve as the basis of a civil action unless the plaintiff shows that the statements were both false and malicious. *See Espinosa v. Aaron's Rents, Inc.*, 484 S.W.3d 533, 543 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *see also Cuba v. Pylant*, 814 F.3d 701, 715 (5th Cir. 2016).

As discussed, the Guimaraeses' claims are based on four categories of statements. We hold that each category is either absolutely or conditionally privileged. We discuss each category in turn.

First, the Guimaraeses' claims are based on the testimony Chris provided at two judicial proceedings, i.e., his divorce trial and the Guimaraeses' joint criminal trial. But it is well-established that statements made during a judicial proceeding are absolutely privileged. *Writt*, 464 S.W.3d at 654. The testimony Chris provided at these two trials cannot serve as the basis of the Guimaraeses' claims. *See id.*

Second, the Guimaraeses' claims are based on the testimony Chris provided at two congressional committee hearings. But again, it is well-established that statements made during a legislative proceeding are absolutely privileged. *Id.* The testimony Chris provided at these two hearings cannot serve as the basis of the Guimaraeses' claims, either. *See id.*

Third, the Guimaraeses' claims are based on the statements Chris made in the criminal complaint he submitted to the U.S. Attorney's Office. Statements made in an initial report of an alleged crime to a law enforcement authority are conditionally privileged; they can serve as the basis of a civil action, but only if the plaintiff shows that the statements were both false and malicious. *See Espinosa*, 484 S.W.3d at 543; *see also Pylant*, 814 F.3d at 715. But here, the Guimaraeses have not even identified

27

which statements in the complaint are allegedly actionable, much less met their burden to show these statements were both false and malicious.

Fourth, Guimaraeses' claims are based on the statements Chris's agent made to the media after the jury found them guilty but before they were convicted and sentenced. We have previously held that the absolute privilege extends to certain media communications, including, for example, "a press release advising the media that a lawsuit has been filed" and providing a "basic description of the allegations." *Collmer*, 176 S.W.3d at 28. If a press release advising the media that a suit has been filed is absolutely privileged, it stands to reason that a media statement made after the return of a favorable verdict is absolutely privileged as well.

We hold that Chris has met his burden to show by a preponderance of the evidence that the communications forming the bases of the Guimaraeses' claims are either absolutely or conditionally privileged. Accordingly, we hold Chris has met his ultimate burden to show he is entitled to dismissal of the Guimaraeses' claims under the TCPA.

**Conclusion**

We reverse the order of the trial court, and we remand this cause to the trial court for entry of a judgment of dismissal and a determination of fees, costs, expenses, and sanctions to be awarded to Chris under the provisions of the TCPA. *See* TEX. CIV. PRAC. & REM. CODE § 27.009.

Gordon Goodman
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.